(No. 78048.—Appellate court judgment affirmed in part and
reversed in part; circuit court judgment affirmed.)

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DEMETRIS THOMAS, Appellee.

*Opinion filed March 21, 1996.*

Roland Burris and James E. Ryan, Attorneys General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, James E. Fitzgerald and Susan R. Schierl, Assistant State's Attorneys, of counsel), for the People.

210

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Demetris Thomas, was indicted in the circuit court of Cook County on two counts of first degree murder (Ill. Rev. Stat. 1991, ch. 38, pars. 9—1(a)(1), (a)(2)), one count of attempt (first degree murder) (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4(a), 9—1(a)(1)), one count of aggravated battery with a firearm (Ill. Rev. Stat. 1991, ch. 38, par. 12—4.2(a)), two counts of aggravated battery (Ill. Rev. Stat. 1991, ch. 38, pars. 12—4(a), (b)(8)), and one count of unlawful use of weapons by a felon (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.1(a)), based on the shooting death of Richard Hillsberg and the wounding of Marcia Samuels. At defendant's bench trial, the trial court granted the State's *nolle prosequi* motion as to the attempted murder count and directed a verdict for defendant on all remaining counts except the two murder counts. After evidence and arguments were complete, the trial court found defendant not guilty of intentional murder and guilty of second degree murder based upon an unreasonable belief that circumstances existed which would justify the killing (Ill. Rev. Stat. 1991, ch. 38, par. 9—2(a)(2)). Because defendant had two prior Class 2 felony convictions, he was eligible to be sentenced for this Class 1 offense to a Class X term (730 ILCS 5/5—5—3(c)(8) (West 1992)), and the court imposed a sentence of 15 years' imprisonment.

The appellate court affirmed defendant's conviction, but reversed the sentence and remanded for a new sentencing hearing, finding that the trial court erred in using defendant's previous convictions twice to enhance his sentence. 266 Ill. App. 3d 870. We granted the State's petition for leave to appeal (155 Ill. 2d R. 315). In addi-

tion, defendant has requested cross-relief (155 Ill. 2d R. 315(g)), arguing that he was denied his right to present a defense when the trial court prohibited the admission of his statement made to the police, and that he was not properly sentenced to a Class X term under section 5—5—3 of the Unified Code of Corrections (the Code) (730 ILCS 5/5—5—3(c)(8) (West 1992)).

Prior to trial, defendant made a motion to suppress the court-reported statement he had made in which he admitted to firing the weapon that killed Richard Hillsberg. Following a hearing, the trial court denied the motion to suppress, finding no violation of defendant's constitutional rights and no evidence to indicate that defendant's statement was made involuntarily.

At trial, the evidence established that Richard Hillsberg and his friends Michael McWherter and Nanette Foreman went to the Bonanza Lounge in Chicago at approximately 1:30 a.m. on February 9, 1991. Defendant was seated at the bar with Marcia Samuels and her friend, Colin, at the time Hillsberg and his friends entered. Shortly thereafter, Hillsberg initiated a confrontation with defendant, who responded by asking if Hillsberg wanted to "take it outside." Hillsberg agreed and he, defendant, McWherter, Foreman and Samuels left the bar.

Marcia Samuels testified that once outside the Bonanza, Nanette Foreman walked toward a car and Samuels did not see her again. The remaining five proceeded to the alley behind the Bonanza. Once in the alley, Samuels and McWherter stood next to each other while defendant and Hillsberg stood some 15 feet away. Samuels stated that she heard defendant ask Hillsberg, "What's up?" and proceed to pull out a gun. Samuels next remembered defendant moving to hit Hillsberg with the gun, and the gun discharging and striking her, causing her to fall to the ground. Samuels testified that

she then heard two more shots, but did not see how they were fired. Samuels stated that Colin had run away when the shooting began and that, when she looked up after being shot, Hillsberg and McWherter were also gone. Defendant helped Samuels up from the ground and then left the alley. Samuels stated that as she leaned against a garbage can, Hillsberg's car sped past her through the alley. Samuels testified that she knew defendant shot her by accident.

Michael McWherter also testified as to the events that occurred in the alley, stating essentially that defendant deliberately fired at Hillsberg. However, at the time of the incident, McWherter told the police that he had not seen the shooting. The trial court, in its findings of fact, disregarded McWherter's testimony in its entirety because he was repeatedly impeached and gave implausible explanations for his omissions and inconsistent statements.

Dr. Edmund Donoghue testified that he performed an autopsy on the decedent, Richard Hillsberg, which revealed two gunshot wounds, one to the back and the other a frontal wound which had passed through the decedent's arm and entered his chest. Dr. Donoghue also observed several minor injuries to the decedent's face consistent with being struck with a blunt object. Decedent's blood-alcohol level was 0.104, exceeding "the legal limit for driving while intoxicated." Dr. Donoghue testified that the cause of death was multiple gunshot wounds, but that it was not possible to determine in what order the shots entered the decedent's body. Because he found no evidence of close range firing on the body, Dr. Donoghue estimated that the shots were fired from at least 18 inches away.

Vanessa Sanders testified that she lived at the Ainslee Hotel on February 9, 1991, and that at approximately 2 a.m., she and her friend Sylvia Jones saw de-

fendant enter the hotel. Sanders testified that defendant told her he had shot Marcia Samuels. Defendant then asked Jones to braid his hair. Defendant told Sanders that he was in the bar when two men entered, that he got into an argument with one of the men and they agreed to take the argument into the alley. Once in the alley, defendant asked the man "What's up?" pointed his gun toward the man, and "the dude pushed it." Sanders testified that defendant told her he hit the man in the head with the gun and it accidentally went off, striking Samuels.

Sylvia Jones similarly testified to statements defendant made to her at the Ainslee Hotel on the night of the shooting. Defendant told her that he had shot Marcia Samuels "by mistake" and asked her to braid his hair because he was running from the police. Jones testified that defendant said he had gotten into an argument with two "white guys" at the bar and that he went into the alley to fight with one of them. Defendant told her that he pulled out his gun, a "22 automatic," and the man "pushed it." Defendant then stated that he hit the man on the head with the gun and that it went off with the bullet striking Samuels in the leg. Defendant further told Jones that he did not mean to shoot the man and that everything that had happened in the alley was an accident.

Detective Lawrence Halec testified that early on the morning of February 9, 1991, he went to Martha Washington Hospital, where he received a description of the shooter from Marcia Samuels. When he returned to the police station he saw a man fitting that description, identified him as the person he was seeking, and placed him under arrest. Halec stated that he advised defendant of his constitutional rights and that defendant refused to talk to him and denied any participation in the shooting. A short time later, Halec again conversed

with defendant, who then indicated that he had some involvement in the incident. This exchange prompted Halec to place defendant in a lineup, where he was identified by McWherter. On cross-examination, Halec testified that he was present when defendant gave a court-reported statement. The trial court sustained the State's hearsay objection to defendant's attempt to introduce this statement as substantive evidence of what occurred in the alley.

Detective John Santopadre testified that on the evening of February 9, 1991, he Mirandized defendant and then showed him a .22-caliber semiautomatic handgun and a jacket. Defendant identified the weapon as that used in the shooting and stated that he was wearing the jacket at the time. It was stipulated that the two bullets recovered from the decedent were fired from that .22-caliber weapon.

Defendant presented the testimony of two witnesses, Robert Land and Thomas Tepolla. Each stated that, in unrelated encounters, they were attacked and battered by the decedent without provocation. During the defense case, the State again moved to prevent defendant from calling Detective Halec for the purpose of introducing defendant's court-reported statement. After lengthy argument and submission of authority from both sides, the trial court sustained the State's motion, ruling that defendant's statement lacked adequate indicia of reliability to allow its substantive admission. The defense then rested. In finding defendant guilty of second degree murder, the trial court rejected defendant's self-defense argument, noting that the types, placement and number of wounds suffered by the decedent indicated that defendant was "not justified in using that type of force."

We first address defendant's contention that he was denied his sixth amendment right to present a defense, as well as his fourteenth amendment right to due pro-

cess, because the trial court prohibited the admission of his court-reported statement as substantive evidence. Following a lengthy argument based upon the State's motion to preclude the defense from introducing defendant's statement on hearsay grounds, the trial court found that the statement lacked sufficient indicia of reliability to overrule the hearsay objection and granted the State's motion. On direct appeal, defendant argued that while the trial court had properly examined the statement's "indicia of reliability" to determine its admissibility, it had erred in failing to find the statement sufficiently reliable. Defendant admitted that his statement was inadmissible hearsay, but argued that under the United States Supreme Court's decision in *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973), and several more recent Supreme Court decisions (*White v. Illinois*, 502 U.S. 346, 116 L. Ed. 2d 848, 112 S. Ct. 736 (1992); *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980)), his hearsay evidence was admissible without regard to the availability of the declarant, as long as the evidence bore sufficient indicia of reliability. The appellate court rejected this argument for several reasons. 266 Ill. App. 3d at 874-78. We, however, decline to consider the merits of defendant's argument that *Roberts* and *White* have extended *Chambers*, because we agree with the trial court that defendant's statement lacked sufficient indicia of reliability.

In *Chambers*, the Court held that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers*, 410 U.S. at 302, 35 L. Ed. 2d at 313, 93 S. Ct. at 1049. Therefore, where the hearsay testimony rejected by the trial court in *Chambers* bore "persuasive assurances of trustworthiness" and was critical to the accused's

defense, its exclusion deprived him of a trial in accord with due process. *Chambers*, 410 U.S. at 302, 35 L. Ed. 2d at 313, 93 S. Ct. at 1049. *Chambers* established four factors to help determine the reliability of a hearsay statement: (1) the statement was spontaneously made to a close acquaintance shortly after the crime occurred; (2) the statement is corroborated by other evidence; (3) the statement is self-incriminating and against the declarant's interests; and (4) there was adequate opportunity for cross-examination of the declarant. *Chambers*, 410 U.S. at 300-01, 35 L. Ed. 2d at 311-12, 93 S. Ct. at 1048-49. See also *People v. Bowel*, 111 Ill. 2d 58, 66-67 (1986). The presence of all four factors is not a condition of admissibility. Rather, the question to be considered in deciding the admissibility of such an extrajudicial statement is whether it was made under circumstances which provide "considerable assurance" of its reliability by objective indicia of trustworthiness. *Bowel*, 111 Ill. 2d at 67. In the instant case, defendant's statement was not made under circumstances which provide "considerable assurance" of reliability.

With respect to the first *Chambers* factor, defendant's court-reported statement was made to the authorities, as opposed to a close acquaintance. See *People v. Rice*, 166 Ill. 2d 35, 44-45 (1995). With respect to the second factor, defendant's statement is corroborated by other evidence in some respects, including the fact that Hillsberg was intoxicated, was the initial aggressor in their confrontation, was a much larger man than defendant, and that the shooting of Samuels was an accident. However, there is no evidence corroborating that portion of defendant's statement supporting his claims of self-defense or involuntary manslaughter. See *Rice*, 166 Ill. 2d at 45. Although defendant argues that his oral statement to Sylvia Jones corroborates the fact that the shooting of Hillsberg was "an accident,"

defendant's court-reported statement contains no such claim. Rather, defendant told the authorities that after the initial shot, he intentionally continued firing the gun.

Defendant's court-reported statement contains the following colloquy:

"MR. LUSTIG [Assistant State's Attorney]: And when you struck [Hillsberg] in the head, what happened with the gun?

DEFENDANT: It went off.

Q. And what did you see [Hillsberg] do when the gun went off?

A. Start running.

Q. Was he running towards you or was he running in the opposite direction?

A. In the opposite direction.

Q. And what did you do when you saw [Hillsberg] running in the opposite direction?

A. I then saw [McWherter] come into the alley, and I thought he had a gun.

Q. Did you ever see a gun on [McWherter]?

A. No.

Q. Did you ever see a knife on [McWherter]?

A. No.

Q. Did you proceed in the opposite direction?

A. Yes.

Q. And as you proceeded in the opposite direction, what did you do with the gun?

A. *I was still letting it fire.*

Q. How many shots did you fire?

A. About four, five.

Q. And in what direction did you fire the gun?

A. Towards [McWherter] and [Hillsberg]." (Emphasis added.)

Thus, defendant's statement to Jones that he "didn't mean to shoot [Hillsberg]," is actually contradicted by his proffered court-reported statement.

With respect to the third *Chambers* factor, we agree that defendant's statement is self-incriminating and against his interest. See *Rice*, 166 Ill. 2d at 46-47 (1995)

(Harrison, J., dissenting); see also *People v. Rivera*, 260 Ill. App. 3d 984 (1994).[1] Finally, regarding the fourth *Chambers* factor, defendant's court-reported statement did not provide the State with an adequate opportunity for cross-examination, where the statement was not made under oath and was not part of the adversarial trial process. See *Chambers*, 410 U.S. at 301, 35 L. Ed. 2d at 312, 93 S. Ct. at 1049. Thus, defendant has failed to establish three of the four *Chambers* factors.

The admission of evidence is within the trial court's sound discretion, and its ruling shall not be disturbed by a court of review absent a clear showing of abuse of that discretion. *People v. Ward*, 101 Ill. 2d 443, 455-56 (1984). Here, we find that the trial court did not abuse its discretion in denying the admission of defendant's hearsay statement because it lacked "sufficient indicia of reliability." See *Rice*, 166 Ill. 2d at 44-45 (absence of three of four *Chambers* factors supports conclusion that testimony was not sufficiently trustworthy to be admitted under *Chambers*).

Additionally, even if, *arguendo*, the trial court's exclusion of defendant's statement was erroneous, the error was harmless beyond a reasonable doubt. Defendant contends that substantive admission of his statement, in conjunction with the testimony of Jones and Sanders, could have supported a finding of involuntary manslaughter "especially in light of the fact that the weapon at issue was an 'automatic' that went off accidentally to begin with *** and could have continued to fire when [defendant] had no desire for the weapon to discharge." However, as previously noted, defendant

---

[1]Although the State cites *People v. Pasch*, 152 Ill. 2d 133 (1992), as authoritative on this point, the defendant in *Pasch* did not argue that his out-of-court statement was admissible under *Chambers*, and this court found it was properly excluded as hearsay and as an admission. *Pasch*, 152 Ill. 2d at 196-97.

admitted in the statement at issue that after the gun initially went off, he *intentionally* continued "letting it fire" in the direction of Hillsberg and McWherter. It is well established that when a defendant intends to fire a gun, points it in the general direction of his intended victim and shoots, such conduct is sufficient to prove the crime of murder. *People v. Cannon*, 49 Ill. 2d 162, 166 (1971); see also *People v. Basden*, 264 Ill. App. 3d 530, 544 (1994); *People v. Jefferson*, 260 Ill. App. 3d 895, 912 (1994). Therefore, nothing in the defendant's statement would have supported a conviction for involuntary manslaughter. In short, defendant sought to introduce the content of his statement as substantive evidence against the charge of first degree murder, the trial court properly found defendant guilty of second degree murder, and there is nothing contained in defendant's statement which would have affected this outcome.

We next address defendant's contention that he was not properly sentenced to a Class X term under section 5—5—3(c)(8) of the Code (730 ILCS 5/5—5—3(c)(8) (West 1992)) due to the "unpremeditated" nature of second degree murder. Citing *People v. Alejos*, 97 Ill. 2d 502 (1983), defendant argues that because second degree murder is not deterrable, it is illogical to apply to him a recidivist sentencing statute which aims to enhance the punishment of those "who persist in making conscious and deliberate personal behavior choices which are contrary to the laws of this State." We disagree.

In *Alejos*, this court held that voluntary manslaughter, the predecessor of second degree murder, could not serve as the predicate felony to a charge of armed violence, because the deterrent effect and intent behind passage of the armed-violence statute would not be advanced by applying it to an unpremeditated crime. *Alejos*, 97 Ill. 2d at 507-09. In *People v. Allen*, 153 Ill. 2d 145, 150-51 (1992), this court explained the term "unpremeditated" as used in *Alejos*:

"The use of the term unpremeditated in describing the offenses of voluntary manslaughter or second degree murder does not negate the intent to kill. When a jury returns a verdict of guilty of voluntary manslaughter or second degree murder, the jury has found that the defendant intended to kill the victim. The use of the term unpremeditated means that the intent to kill was mitigated by the existence of either a sudden and intense passion or imperfect self-defense. It is the presence of either of these statutory mitigating factors that reduces an unlawful homicide from murder to voluntary manslaughter or second degree murder; it is not the absence of an intent to kill."

Indeed, this court recently reaffirmed that the mental state required for second degree murder is either intent or knowledge. *People v. Jeffries*, 164 Ill. 2d 104, 122 (1995). Therefore, even were we to agree with defendant that the purpose of section 5—5—3(c)(8) is to punish more severely those "who persist in making conscious and deliberate personal behavior choices which are contrary to the laws of this State," defendant's conduct does not preclude him from sentencing under this section.

In the instant case, defendant was convicted of committing a "knowing" homicide which was mitigated to second degree murder because of defendant's unreasonable belief that deadly force was necessary to protect himself. Defendant's unreasonable belief in no way detracts from the fact that he introduced a lethal weapon into the altercation and knowingly killed Richard Hillsberg. The unpremeditated belief component of defendant's act goes only to mitigating the offense from first to second degree murder; it does not mean that defendant did not knowingly kill his victim. See *Allen*, 153 Ill. 2d at 150-51. Thus, defendant's killing of Hillsberg was a "conscious and deliberate personal behavior choice" contrary to the laws of this State, and it is not "illogical" to apply a recidivist sentencing statute to him.

Section 5—5—3(c)(8) provides:

"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and rise out of different series of acts, such defendant *shall* be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." (Emphasis added.) 730 ILCS 5/5—5—3(c)(8) (West 1992).

It is well established that "the legislature has the authority to set the nature and extent of penalties. Courts will not interfere with such legislation unless the challenged penalty is clearly in excess of the very broad and general constitutional limitations applicable." *People ex rel. Carey v. Bentivenga*, 83 Ill. 2d 537, 542 (1981); *Allen*, 153 Ill. 2d at 154. A statute is within constitutional limits if it is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare. *Allen*, 153 Ill. 2d at 154. With section 5—5—3(c)(8), the legislature has determined that in order to protect the public health, safety and welfare, certain individuals who continually engage in specified criminal activities are to be punished as Class X offenders. We agree with the appellate court that in construing this statute, a reviewing court "must look to the words used by the drafters of the legislation, as they are most often the best indication of their intent." 266 Ill. App. 3d at 879; *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 151 (1985). Thus, the question here becomes whether the plain language of section 5—5—3(c)(8) demonstrates that the legislature intended that *all* offenders meeting the statutory requirements,

including those convicted of second degree murder, be treated for sentencing purposes as Class X offenders.

We believe the appellate court correctly found that the legislature intended the phrase "defendant shall be sentenced as a Class X offender" to have a mandatory meaning, precluding any exceptions. 266 Ill. App. 3d at 880-81; 730 ILCS 5/5—5—3(c)(8) (West 1992). This court has previously held that, generally, use of the word "shall" indicates a mandatory obligation unless the statute indicates otherwise. *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 274 (1988); *People v. Gerke*, 123 Ill. 2d 85, 94 (1988). Here, the statutory language expresses a clear legislative intent to enhance the punishment of certain offenders based entirely on objective, historical criteria, their record of criminal convictions, and places no limitations or restrictions on its application based on mental state or any other subjective matter. Additionally, this court has repeatedly characterized section 5—5—3(c)(8) as mandatory. See *Morrow v. Dixon*, 108 Ill. 2d 223, 226-27 (1985) (imposition of sentence on defendant as Class X offender was mandated where trial court was aware of prior convictions satisfying section 5—5—3(c)(8), because statutory provision for minimum sentence is mandatory and must be obeyed); see also *People v. Jameson*, 162 Ill. 2d 282, 287 (1994) (referring to section 5—5—3(c)(8) as a "mandatory sentencing provision"); *People v. Levin*, 157 Ill. 2d 138, 156 (1993) (in case of Class X offender, sentencer is "required by statute to impose a sentence from an elevated sentencing range").

Defendant does not argue that the legislature has acted outside constitutional guidelines in creating section 5—5—3(c)(8). Therefore, where we have determined that the legislature intended that section to be mandatory, and that defendant's second degree murder conviction and his two previous Class 2 felony convictions

fulfill the statutory requirements of that section, defendant was properly sentenced as a Class X offender.

Finally, we address the State's contention that the appellate court erred in determining that defendant's sentence constituted an impermissible double enhancement. The appellate court held that the trial court could not use defendant's two prior Class 2 felony convictions both to qualify defendant for a Class X term under section 5—5—3(c)(8) of the Code (730 ILCS 5/5—5—3(c)(8) (West 1992)) and as an aggravating factor in sentencing defendant beyond the minimum Class X term (730 ILCS 5/5—5—3.2(a)(3) (West 1992)).

Article I, section 11, of the Illinois Constitution of 1970 provides: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." "Section 11 is directed to the legislature in its function of declaring what conduct is criminal and the penalties for the conduct. It is directed to the judiciary in that it requires courts not to abuse discretion in imposing sentences within the framework set by the legislature." *People v. Taylor*, 102 Ill. 2d 201, 206 (1984). In the exercise of its duties, the legislature has the power to codify provisions which enhance a criminal offense (*e.g.*, misdemeanor to a felony) or enhance the applicable range of punishment (*e.g.*, extended term sentence or Class X sentencing). This is known as "single enhancement." Double enhancement occurs when a factor already used to enhance an offense or penalty is reused to subject a defendant to a further enhanced offense or penalty. For example, the same factor has been used to double enhance an offense (*People v. Haron*, 85 Ill. 2d 261 (1981) (offense enhanced from misdemeanor battery to felony aggravated battery and from aggravated battery to Class X felony armed violence based on use of a deadly weapon)), a punishment (*Fitzsimmons v. Norgle*,

104 Ill. 2d 369 (1984) (defendant transferred from juvenile to adult criminal court and probation precluded as potential punishment based on same prior conviction)), or some combination of the two (*People v. Hobbs*, 86 Ill. 2d 242 (1981) (misdemeanor theft enhanced to a felony theft and extended term sentence imposed based on same prior conviction)). A double enhancement is not necessarily improper; the legislature may have intended such a result. See *People v. Ferguson*, 132 Ill. 2d 86, 97-98 (1989); *Fitzsimmons*, 104 Ill. 2d at 374.

Contrary to the appellate court's finding, the instant case does not involve a double enhancement. Section 5—5—3(c)(8) does not elevate the class of a crime, but merely sets forth criteria under which a defendant shall be sentenced according to the guidelines for a Class X felony. See *People v. Jameson*, 162 Ill. 2d 282, 290 (1994) (under section 5—5—3(c)(8), a defendant's sentence is increased because of prior felony convictions, but the classification of offense with which the defendant is charged and convicted remains the same). Under this statute, the legislature manifested its intent to subject certain defendants convicted of Class 1 and Class 2 felonies to an enhanced sentencing range of from 6 to 30 years. Therefore, defendant's *offense* was not enhanced from a Class 1 to a Class X felony; he was simply subject to a *single punishment enhancement* to the Class X range.

The appellate court held that defendant was subjected to a second enhancement when the trial court considered the same two prior convictions which established his eligibility for Class X sentencing as aggravating factors under section 5—5—3.2(a)(3). However, this "second use" of defendant's prior convictions does not constitute an enhancement, because the discretionary act of a sentencing court in fashioning a particular sentence tailored to the needs of society and the defen-

dant, within the available parameters, is a requisite part of every individualized sentencing determination. See *People v. La Pointe*, 88 Ill. 2d 482, 492 (1981) (the Code vests a wide discretion in sentencing judges in order to permit reasoned judgments as to the penalty appropriate to the particular circumstances of each case). The judicial exercise of this discretion, in fashioning an appropriate sentence within the framework provided by the legislature, is not properly understood as an "enhancement."

In reversing defendant's sentence, the appellate court relied on *People v. Owens*, 205 Ill. App. 3d 43 (1990), and *People v. Ward*, 243 Ill. App. 3d 850 (1993). We believe that the reasoning in *Owens* and *Ward* is flawed, due apparently to a misreading of this court's decision in *People v. Hobbs*, 86 Ill. 2d 242 (1981).[2] In *Hobbs*, the defendant's misdemeanor theft conviction was enhanced to a Class 4 felony on the basis of a prior felony theft conviction, and the same prior felony theft conviction was again used to impose an extended term sentence under section 5—5—3.2(b) of the Code. This court concluded that because the prior felony theft conviction was an *element* of the later felony theft, serving to enhance the offense from a misdemeanor to a felony, use of the same prior theft conviction to impose an extended term penalty violated the requirement of section 5—5—3.2(b) that the charges must be "separately brought and tried and arise out of different series of acts." Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(1); *Hobbs*, 86 Ill. 2d at 246. Thus, *Hobbs* involved a double

---

[2]In *People v. Meyer*, 110 Ill. App. 3d 673, 679 (1982), the appellate court over broadly interpreted *Hobbs* to mean that "once a prior conviction is used to turn a misdemeanor into a felony or impose an extended term, the usefulness for sentencing purposes is exhausted." *Owens* relied on *Meyer*, and *Ward* summarily cited to *Owens*. Therefore, to the extent that these cases conflict with our holding herein, they are rejected.

enhancement which was found to be impermissible as contrary to legislative intent.

The holding in *Hobbs*, however, was limited to situations where the same prior conviction is used both to enhance the class of an offense and to enhance the punishment for that offense. See *People v. Gonzalez*, 151 Ill. 2d 79, 89 (1992). *Hobbs* did not address the issue presented in the instant action: whether a sentencing court's use of prior convictions to impose a Class X sentence under section 5—5—3(c)(8) precludes the court from considering those same prior convictions as an aggravating factor under section 5—5—3.2(a)(3). See *People v. Harvey*, 162 Ill. App. 3d 468, 475 (1987) ("We do not interpret the rule of *Hobbs* to require that a convict whose sentence is enhanced to a Class X status because of recidivism to be entitled to a near minimum sentence if no other aggravating factors are present"). Accordingly, we must determine whether, in enacting section 5—5—3(c)(8), the legislature intended to preclude a sentencing court from considering the defendant's complete criminal history in fashioning an appropriate sentence within the Class X range.

In *People v. Saldivar*, 113 Ill. 2d 256 (1986), this court held that reconsideration of a factor inherent in the legislature's definition of the offense is impermissible. While the instant sentencing situation is distinguishable from that set forth in *Saldivar*,[3] we believe that case is useful in discerning the legislature's intent herein. This court, in *Saldivar*, made it clear that although sentencing courts cannot consider an element inherent in the offense as an aggravating factor, that

---

[3]In the instant case, the two prior convictions used to establish defendant's eligibility to be sentenced to a Class X term are not elements of the substantive offense of second degree murder, but merely matters to be considered for sentence enhancement. See *People v. Washington*, 195 Ill. App. 3d 520, 530 (1990).

rule would not be rigidly applied, "thereby restricting the function of a sentencing judge by forcing him to ignore factors relevant to the imposition of sentence." *Saldivar*, 113 Ill. 2d at 268. The *Saldivar* court further stated:

"A reasoned judgment as to the proper penalty to be imposed must *** be based upon the particular circumstances of each individual case. [Citations.] Such a judgment depends upon many *relevant* factors, including the defendant's demeanor, habits, age, mentality, credibility, general moral character, and social environment [citations], as well as 'the nature and circumstances of the offense ***.' " (Emphasis in original.) *Saldivar*, 113 Ill. 2d at 268, quoting *People v. Hunter*, 101 Ill. App. 3d 692, 694 (1981).

Following this reasoning, the *Saldivar* court held that in sentencing a defendant on a conviction for voluntary manslaughter it was permissible for the trial court, in applying the statutory aggravating factor that the defendant's conduct caused serious harm to the victim, to consider the force employed and the physical manner in which the victim's death was brought about. *Saldivar*, 113 Ill. 2d at 271. Thus, *Saldivar* allowed the sentencing court some discretion in "reconsidering" as an aggravating factor under section 5—5—3.2(a), that which, arguably, had already been considered by the legislature in establishing the applicable sentencing range for the offense. By analogy, here, although the legislature considered the prior convictions of certain defendants in establishing their eligibility for Class X sentencing, the legislature did not intend to impede a sentencing court's discretion in fashioning an appropriate sentence, within the Class X range, by precluding consideration of their criminal history as an aggravating factor. Rather, while the *fact* of a defendant's prior convictions determines his eligibility for a Class X sentence, it is the *nature and circumstances* of these prior convictions which, along with other factors in ag-

gravation and mitigation, determine the exact length of that sentence. See *Saldivar*, 113 Ill. 2d at 269; see also *People v. Levin*, 157 Ill. 2d 138, 156 (1993) (sentencer of Class X offender, while required by statute to impose sentence from elevated range, is permitted discretion to determine appropriate sentence within that range).

Additionally, the finding of the appellate court herein, that a sentencing court is precluded from considering a defendant's prior criminal history in fashioning an appropriate sentence for a Class X offender under section 5—5—3(c)(8), is contrary to the legislative intent of that section to punish recidivists more severely. Other appellate cases have implicitly rejected this reasoning. See *People v. Williams*, 201 Ill. App. 3d 434, 439-40 (1990) (in rejecting Class X offender's challenge to his 12-year sentence, court specifically cited defendant's criminal background as an aggravating factor); *People v. Stewart*, 186 Ill. App. 3d 833, 840-41 (1989) (eight-year sentence for burglary imposed under section 5—5—3(c)(8) was proper, even though sentencing court considered defendant's prior criminal history). Indeed, the appellate court's holding creates an anomalous situation.

In the instant case, defendant was convicted of a Class 1 felony for which the sentencing range is from 4 to 15 years. 730 ILCS 5/5—8—1(a)(4) (West 1992). Because defendant had two prior Class 2 felony convictions, rendering him eligible to be sentenced to a Class X term, the sentencing court was required to impose a sentence of from 6 to 30 years. *Morrow v. Dixon*, 108 Ill. 2d 223 (1985); 730 ILCS 5/5—5—3(a)(8), 5—8—1(a)(3) (West 1992). Under the appellate court's decision, because defendant's prior criminal history, consisting mainly of these two prior Class 2 felonies, was the only factor in aggravation cited by the trial court, defendant should have received a sentence close to the minimum

six-year term. 266 Ill. App. 3d at 881. However, if defendant had been sentenced as a Class 1 felon, the sentencing court could have relied upon defendant's two prior felony convictions as an aggravating factor in order to impose the maximum 15-year sentence. Clearly, the legislature did not intend such an absurd result. See *Gonzalez*, 151 Ill. 2d at 86.

In summary, the appellate court confused the concept of "double enhancement." What occurred in the instant action is a single enhancement of defendant's punishment, pursuant to the statutory requirement of section 5—5—3(c)(8). The sentencing court then "reconsidered" defendant's two prior convictions, as part of defendant's entire criminal history, in performing its constitutionally mandated duty to assess defendant's rehabilitative potential in order to fashion an appropriate sentence. This exercise of judicial discretion was entirely proper and does not constitute an enhancement. We therefore hold that a sentencing court's use of prior convictions to impose a Class X sentence under section 5—5—3(c)(8) does not preclude the court from considering those same prior convictions as an aggravating factor under section 5—5—3.2(a)(3).

Thus, for the reasons stated herein, we affirm that portion of the appellate court's judgment which affirmed defendant's conviction for second degree murder, but reverse the appellate court's judgment to the extent that it set aside defendant's sentence and remanded for a new hearing. The judgment of the circuit court is affirmed.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment affirmed.*