(No. 90390.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LEWIS O'BRIEN, Appellee.

*Opinion filed July 26, 2001.*

GARMAN, J., took no part.
McMORROW, J., joined by FREEMAN and KILBRIDE, JJ., specially concurring.

James E. Ryan, Attorney General, of Springfield, and John C. Piland, State's Attorney, of Urbana (Joel D. Bertocchi, Solicitor General, William L. Browers and Russell K. Benton, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Robert J. Biderman and Kathy Shepard, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People.

James Kuehl, of Thomas A. Bruno & Associates, of Urbana, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The issue presented in this appeal is whether section 3—707 of the Illinois Vehicle Code (625 ILCS 5/3—707 (West 1998)), which prohibits the operation of an uninsured motor vehicle, is an absolute liability offense. We hold that it is.

## BACKGROUND

Defendant, Lewis O'Brien, was charged by traffic citation with violating section 3—707 of the Illinois Vehicle Code (the Code). Section 3—707 provides, in relevant part:

"No person shall operate a motor vehicle unless the motor vehicle is covered by a liability insurance policy in accordance with Section 7—601 of this Code.

Any person who fails to comply with a request by a law enforcement officer for display of evidence of insurance, as required under Section 7—602 of this Code, shall be deemed to be operating an uninsured motor vehicle.

Any operator of a motor vehicle subject to registration under this Code who is convicted of violating this Section is guilty of a business offense and shall be required to pay a fine in excess of $500, but not more than $1,000. However, no person charged with violating this Section shall be convicted if such person produces in court satisfactory evidence that at the time of the arrest the motor vehicle was covered by a liability insurance policy in accordance with Section 7—601 of this Code." 625 ILCS 5/3— 707 (West 1998).

The sole witness at defendant's bench trial was Officer Stephen Mechling of the University of Illinois police department. Officer Mechling testified that, on June 10, 1999, he stopped defendant's vehicle because the license plate registration sticker on that vehicle had expired. Defendant explained that he had borrowed the car and therefore did not know that the sticker had expired. Officer Mechling then asked defendant whether the vehicle was insured, and defendant stated that he did not know.

When defendant was unable to produce proof that the car was insured, Officer Mechling issued defendant a citation for operating an uninsured motor vehicle.

Defendant moved for a directed verdict. In that motion, defendant conceded that, if section 3—707 is an absolute liability offense, the State had established a *prima facie* case. Defendant argued, however, that section 3—707 is *not* an absolute liability offense but instead requires proof of a culpable mental state. According to defendant, because the State failed to prove that defendant either knew or should have known that the borrowed vehicle was uninsured, the State failed to prove defendant guilty of violating section 3—707. The trial court denied defendant's motion, holding that section 3—707 is an absolute liability offense. When no additional evidence was presented, the trial court found defendant guilty and imposed a fine of $501 plus court costs.

Defendant appealed, and the appellate court reversed his conviction (316 Ill. App. 3d 219). In doing so, the appellate court held that neither the plain language of nor the public policy underlying section 3—707 justifies the imposition of absolute liability. 316 Ill. App. 3d at 222-24. We allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315(a).

## ANALYSIS

The issue in this case is whether section 3—707 creates an absolute liability offense. When construing a statute, this court's primary objective is to ascertain and give effect to the legislature's intent. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996). We begin with the language of the statute, which must be given its plain and ordinary meaning. *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184 (1999). Where the language is clear and unambiguous, we will apply the statute without resort to further aids of statutory

construction. *Davis*, 186 Ill. 2d at 185. One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). Words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute. *Michigan Avenue National Bank*, 191 Ill. 2d at 504. The standard of review on questions of statutory interpretation is *de novo*. *Michigan Avenue National Bank*, 191 Ill. 2d at 503.

Turning to section 3—707, we begin our analysis with the guidelines set forth by the legislature in section 4—9 of the Criminal Code of 1961 (the Criminal Code) (720 ILCS 5/4—9 (West 1998)). Section 4—9 states:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." 720 ILCS 5/4—9 (West 1998).

This section applies to all criminal penalty provisions, including those outside the Criminal Code of 1961. *People v. Gean*, 143 Ill. 2d 281, 285 (1991).

As we noted in *Gean*, the committee comments to section 4—9 reveal that the legislature intended to limit the scope of absolute liability. *Gean*, 143 Ill. 2d at 285-86. Those comments read, in relevant part:

"This section is intended to establish, as an expression of general legislative intent, rather strict limitations upon the interpretation that mental state is not an element of an offense, although the express language of the provision defining the offense fails to describe such an element. ***

***

In addition to permitting a construction requiring absolute liability in offenses punishable by incarceration or

by a fine of not more than $500, the second part of section 4—9 expresses the policy that in other offenses not including a mental state in the definition only a clearly indicated legislative intent to create absolute liability should be recognized, and in all other instances, a mental-state requirement should be implied as an application of the general rule that an offense consists of an act accompanied by a culpable mental state ***." 720 ILCS Ann. 5/4—9, Committee Comments—1961, at 169-72 (Smith-Hurd 1993).

Consistent with the committee comments, "[a]bsent either a clear indication that the legislature intended to impose absolute liability or an important public policy favoring it, this court has been unwilling to interpret a statute as creating an absolute liability offense." *People v. Sevilla*, 132 Ill. 2d 113, 120 (1989). Instead, if at all possible, the court will infer the existence of a culpable mental state, even where the statute itself appears to impose absolute liability. See, *e.g., People v. Tolliver*, 147 Ill. 2d 397, 401 (1992); *Gean*, 143 Ill. 2d at 288; *Sevilla*, 132 Ill. 2d at 123; *People v. Nunn*, 77 Ill. 2d 243, 252 (1979).

The parties agree that, on its face, section 3—707 does not require a culpable mental state. Likewise, the parties agree that a violation of section 3—707 is punishable by a fine exceeding $500. The critical question therefore is whether section 3—707 "clearly indicates a legislative purpose to impose absolute liability for the conduct described." 720 ILCS 5/4—9 (West 1998). We hold that it does.

The legislature's clear intent to impose absolute liability can be gleaned from several sources. First, and most importantly, the plain language of section 3—707 unquestionably provides for absolute liability. Indeed, the language could not be clearer: *"No person shall operate* a motor vehicle unless the motor vehicle is covered by a liability insurance policy in accordance with Section 7—601 of this Code" (emphasis added) (625 ILCS 5/3—

707 (West 1998)). Section 7—601, in turn, provides that *"[n]o person shall operate \*\*\* a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy."* (Emphasis added.) 625 ILCS 5/7—601 (West 1998). Neither statute makes any exception for any class of operators, and both statutes employ the word "shall," which this court has construed as a clear expression of legislative intent to impose a mandatory obligation. See, *e.g., Village of Winfield v. Illinois State Labor Relations Board*, 176 Ill. 2d 54, 64 (1997); *People v. Thomas*, 171 Ill. 2d 207, 222 (1996). In *Thomas*, for example, this court specifically held that the use of the word "shall," in the absence of any statutory exceptions, *"expresse[d] a clear legislative intent"* to make Class X sentencing mandatory for certain repeat offenders. (Emphasis added.) *Thomas*, 171 Ill. 2d at 222.

Second, the relatively minor penalty that attaches to a violation of section 3—707 weighs heavily in favor of a legislative purpose to impose absolute liability. As we observed in *Gean*:

> "The possible punishment which can be imposed for a violation of a statute is an important factor in determining whether it is an absolute liability offense. [Citations.] 'It would be unthinkable to subject a person to a long term of imprisonment for an offense he might commit unknowingly.' [Citation.] Therefore, 'where the punishment is great, it is less likely that the legislature intended to create an absolute liability offense.' [Citations.]" *Gean*, 143 Ill. 2d at 287.

In this case, defendant was never facing either great punishment or "a long term of imprisonment." On the contrary, the crime established by section 3—707 is a "business offense," which by definition is not punishable by incarceration. See 730 ILCS 5/5—5—1(d), 5—5—2(c), 5—5—3(c)(5) (West 1998). Moreover, the penalty for violating section 3—707 (a $501 to $1,000 fine) only slightly exceeds the $500 statutory maximum for *per se*

absolute liability offenses. See 720 ILCS 5/4—9 (West 1998). *Gean* teaches that, where the penalty is severe, the likelihood of a legislative intent to impose absolute liability is reduced. *Gean*, 143 Ill. 2d at 287. The converse also is true. Where, as here, the penalty is not severe, the likelihood of a legislative intent to impose absolute liability is enhanced.

Finally, we can discern a clear legislative purpose to impose absolute liability by reading section 3—707 in the context of related provisions of the Code. On this point, the analysis set forth in *In re K.C.*, 186 Ill. 2d 542 (1999), is instructive. In *K.C.*, this court was asked to decide whether sections 4—102(a)(1) and 4—102(a)(2) of the Code (625 ILCS 4—102(a)(1), (a)(2) (West 1998)) are absolute liability offenses. In holding that they are, this court compared section 4—102(a)(2) with section 21—2 of the Criminal Code (720 ILCS 5/21—2 (West 1998)). Both statutes punish the unlawful trespass to a vehicle, but section 21—2 contains a culpable mental state while section 4—102(a)(2) does not. In holding that the absence of a culpable mental state in section 4—102(a)(2) was evidence of the legislature's intent to impose absolute liability, we noted that "by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended." *K.C.*, 186 Ill. 2d at 549-50. We further noted that, "were we to hold that section 4—102 implicitly requires proof of a culpable mental state, the 'knowingly' language of section 21—2 would be rendered 'meaningless surplusage.'" *K.C.*, 186 Ill. 2d at 550. Accordingly, this court declined to adopt such a reading. *K.C.*, 186 Ill. 2d at 550.

Turning now to section 3—707, we find that chapter 3, article VII, of the Code is replete with penal statutes containing a culpable mental state. For example, section 3—701(1) provides that "no person shall operate, nor

shall an owner *knowingly* permit to be operated" a vehicle that lacks proper evidence of registration. (Emphasis added.) 625 ILCS 5/3—701(1) (West 1998). Likewise, section 3—702(a)(1) provides that "[n]o person shall operate, nor shall an owner *knowingly* permit to be operated" a vehicle for which the registration has been cancelled, suspended, or revoked. (Emphasis added.) 625 ILCS 5/3—702(a)(1) (West 1998). Section 3—702(b) provides that "[n]o person shall use, nor shall any owner use or *knowingly* permit the use of" any vehicle registration that has been cancelled, suspended, or revoked. (Emphasis added.) 625 ILCS 5/3—702(b) (West 1998). Section 3—703 provides that "[n]o person shall *** *knowingly* permit the use of any [evidence of vehicle registration] by one not entitled thereto." (Emphasis added.) 625 ILCS 5/3—703 (West 1998). Finally, section 3—710 provides that "[n]o person shall display evidence of insurance to a law enforcement officer, court, or officer of the court, *knowing* there is no valid insurance in effect on the motor vehicle ***." (Emphasis added.) 625 ILCS 5/3—710 (West 1998).

In accordance with *K.C.*, we must presume that, by specifically including a culpable mental state in the numerous statutes identified above, the legislature's omission of a culpable mental state in section 3—707 "indicates that different results were intended." See *K.C.*, 186 Ill. 2d at 550. Moreover, were we to hold that section 3—707 implicitly requires proof of a culpable mental state, the specific knowledge requirements of sections 3—701, 3—702(a)(1), 3—702(b), 3—703, and 3—710 would be rendered "meaningless surplusage." As in *K.C.*, we will not adopt such a reading.

## CONCLUSION

In sum, we hold that, both on its face and in the context of related provisions of the Code, the plain language of section 3—707 clearly indicates a legislative

purpose to impose absolute liability. We therefore reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE GARMAN took no part in the consideration or decision of this case.

JUSTICE McMORROW, specially concurring:

At a bench trial, the State introduced evidence establishing that defendant, during a traffic stop, was unable to produce documentation to show that the borrowed vehicle he was driving was insured. For this reason, defendant was charged with violating section 3—707 of the Illinois Vehicle Code (625 ILCS 5/3—707 (West 2000)) for operating an uninsured motor vehicle. Defendant presented no evidence in his defense. Instead, he sought a directed verdict, arguing that the State had not proved a culpable mental state and, therefore, had not proved him guilty beyond a reasonable doubt. The trial court found defendant guilty, but the appellate court reversed and held that, "To show a violation of section 3—707 of the Code, the prosecution must prove that the accused knew that the vehicle he was driving was uninsured." 316 Ill. App. 3d at 224.

In reversing the appellate court decision, this court today holds that section 3—707 of the Code is an absolute liability offense. While I agree with this result, I write separately because my conclusion is drawn from considerations other than those relied on by the majority.

There is no dispute that section 3—707 contains no *mens rea* and thus the statute, on its face, imposes absolute liability. It is also agreed, however, that pursuant to section 4—9 of the Criminal Code of 1961, even when express language regarding mental state is lacking, absolute liability may not be presumed unless: (1) the of-

fense is a misdemeanor which is not punishable by incarceration or a fine exceeding $500, or (2) the legislative intent to impose absolute liability is clear. See 720 ILCS 5/4—9 (West 2000). Because a violation of section 3—707 is punishable by a fine greater than $500, the majority concedes that the existence of a culpable mental state should be inferred unless there is a clear indication that the legislature intended to impose absolute liability. See *People v. Anderson,* 148 Ill. 2d 15 (1992); *People v. Sevilla,* 132 Ill. 2d 113, 120 (1989).

The majority attempts to discern legislative intent by focusing on the word "shall" in the provision, "No person *shall* operate a motor vehicle ***." (Emphasis added.) 625 ILCS 5/3—707 (West 1998). The majority finds the word "shall" to be "a clear expression of legislative intent to impose a mandatory obligation." 197 Ill. 2d at 93. But this observation is not particularly relevant. There is no question that the legislature intended to impose a mandatory obligation to insure motor vehicles. We know that insurance is mandatory pursuant to section 7—601 of the Code (625 ILCS 5/7—601 (West 1998)). The question to be resolved in this appeal, however, is whether a violation of this mandatory obligation, to be proved, must be accompanied by evidence of a culpable mental state. In other words, the question in this appeal is whether the legislature intended that the State, in order to convict someone for operating an uninsured vehicle, must prove that the driver had knowledge that the vehicle was uninsured. Focusing on the word "shall" in the provision fails to resolve the issue.

I believe that a legislative intent to impose absolute liability is discernable from the legislative scheme created in section 3—707. When viewing the statute in its entirety, as we must (*State v. Mikusch,* 138 Ill. 2d 242, 247 (1990) (in seeking to ascertain legislative intent, courts should consider the statute in its entirety, noting

the subject being addressed and the legislature's apparent objective in enacting the statute)), a statutory scheme is revealed, which makes clear that the legislature's omission of a *mens rea* requirement was not an oversight.

Section 3—707, in addition to barring all persons from operating uninsured motor vehicles, states:

> "Any person who fails to comply with a request by a law enforcement officer for display of evidence of insurance, as required by Section 7—602 of this Code, shall be deemed to be operating an uninsured motor vehicle.
>
> *** However, no person charged with violating this Section shall be convicted if such person produces in court satisfactory evidence that at the time of the arrest the motor vehicle was covered by a liability insurance policy in accordance with Section 7—601 of this Code." 625 ILCS 5/3—707 (West 2000).

This places all operators of motor vehicles on notice that they must have proof of insurance readily available. By including this requirement, and by creating the rebuttable presumption that the vehicle is uninsured if the driver is unable to produce evidence of insurance, the legislature has equated the failure to possess an insurance card with knowledge that the motor vehicle is uninsured. Clearly, the onus is placed on the person operating the motor vehicle to ascertain the insured status of the vehicle, as evidenced by the insurance card, prior to operating a vehicle on the roads of this state.

I also find it significant that the presumption of a violation, created by the inability to produce evidence of insurance on demand, can be rebutted only by satisfactory proof in a court of law, that the motor vehicle was actually covered by a liability insurance policy at the time the violation was charged. By providing one means of avoiding liability, it may be inferred that the legislature intended to exclude all others. See *State v. Mikusch*, 138 Ill. 2d 242 (1990). Unknowing or unintentional violations are not recognized or acceptable excuses. Thus, the scheme created by the legislature in section 3—707

reinforces the notion that the omission of a *mens rea* requirement was not inadvertent and that the operation of an uninsured motor vehicle was intended to be an absolute liability offense.

In addition to the statutory scheme, I find public policy support for the conclusion that section 3—707 was intended to be an absolute liability offense, something the majority fails to address. As we have noted in the past, when a statute does not expressly state whether absolute liability will or will not apply, it is appropriate to look to sources beyond the statutory language to ascertain the intent of the legislature and decide whether the statute indicates a clear legislative purpose to impose absolute liability. See *Sevilla*, 132 Ill. 2d at 118-19. Factors to be considered are "the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved." *Stewart v. Industrial Comm'n*, 115 Ill. 2d 337, 341 (1987).

Section 3—707 is the penalty provision for violation of the mandatory insurance provisions of the Code. See 625 ILCS 5/7—601, 7—602 (West 2000). The purpose to be achieved, then, is enforcement of the mandatory insurance requirement, which was instituted for the protection of the public (see *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 285 Ill. App. 3d 115, 120-21 (1996)), and to promote public safety and financial responsibility (see 625 ILCS 5/7—100 through 7—708 (West 2000) ("Illinois Safety and Family Financial Responsibility Law")). In the legislature's words, "the State has a compelling interest in ensuring that drivers *** demonstrate financial responsibility, including family financial responsibility, *** in order to safely own and operate a motor vehicle." See 625 ILCS 5/7—701 (West 2000). Thus, the legislature, in its wisdom, has determined that important public interests are served by eliminating uninsured vehicles from the

roads of this state. It makes sense, then, that they should place an absolute obligation on the operators, who are directly responsible for placing a motor vehicle on the road, to ascertain the insured status of the motor vehicle or suffer the consequences. Thus, section 3—707, which defines the penalty for a violation of the mandatory insurance requirements set forth in sections 7—601 of the Code, is appropriately read as imposing absolute liability and expressing the public policy of Illinois.

It is for these reasons that I would reverse the appellate court decision and find that the defendant was properly convicted of a violation of section 3—707 of the Code.

JUSTICES FREEMAN and KILBRIDE join in this special concurrence.