2020 IL App (1st) 191690-U

No. 1-19-1690

Order filed December 31, 2020

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 12131 |
| | ) | |
| DELVIN JACKSON, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's 12-year sentence for aggravated battery of a peace officer is affirmed over his claim that the sentence is disproportionate to the seriousness of his offense.

¶ 2    Following a bench trial, defendant Delvin Jackson was found guilty of aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4) (West Supp. 2015)) and sentenced to 12 years' imprisonment. He appeals, arguing that his sentence is disproportionate to the seriousness of his offense. We affirm.

¶ 3    At trial, Sergeant Troy Smith of the Cook County Sheriff's Department testified that on March 23, 2016, he conducted a sweep of inmate cells for contraband at the Division 11 jail. Later, defendant, an inmate, approached Smith and Lieutenant James Holmes, who was also in the area, and said something was missing from his cell. Defendant was "irritated" and refused to reenter his cell. Instead, he "grabbed" a broom and "attempted to swing" it at Holmes, who deployed "OC Spray." Defendant then "charged towards" Holmes, and several officers and a supervisor assisted by taking defendant to the ground and handcuffing him.

¶ 4    Holmes testified that he noticed defendant arguing with Smith, told them to "stop," and instructed defendant to enter his cell. Defendant refused, and instead swore at Holmes and grabbed the broom. Holmes deployed OC Spray towards defendant, but he still attacked Holmes with the broom, striking him in the upper arm and shoulder. Holmes did not suffer any visible injuries, but was sore the next day. The State introduced video of the incident at trial, which is included in the record on appeal and consistent with Holmes's testimony.

¶ 5    On cross-examination, Holmes stated that he grabbed the broom after defendant's third swing and snapped it. Holmes did not swing the broom at defendant. Other inmates had complained about Holmes using excessive force in previous incidents.

¶ 6    Defendant testified that he returned to his cell from recreation and found it in "disarray." He exited the cell and asked to speak with Holmes, who turned and asked defendant "what the F" he wanted. Defendant then asked Holmes to speak with the sergeant, but Holmes refused and told defendant to return to his cell. When defendant did not reenter his cell and again asked if he could speak to a sergeant, Holmes sprayed defendant with mace. Defendant responded by picking up "the stick" and swinging it at Holmes. On cross-examination, defendant denied that he was upset

prior to the incident. He admitted he did not comply when Holmes told him to reenter his cell, but denied speaking to Smith prior to the incident.

¶ 7    In rebuttal, the State entered a stipulation that defendant had prior convictions for manslaughter and attempt murder.

¶ 8    After argument, the court found defendant guilty. Defendant's motion for a new trial was denied.

¶ 9    Defendant's presentence investigation (PSI) report showed he was 50 years old on the date of the offense. He had multiple prior convictions, including for burglary, aggravated battery of a peace officer, armed violence, involuntary manslaughter, possession of a controlled substance with intent to deliver, domestic battery, and attempt murder. He earned a GED while incarcerated in 1988. He worked as an exterminator in 2009, and in maintenance from July 2013 to February 2014. At the time of the instant offense, defendant was serving a 10-year sentence for attempt murder.

¶ 10    At sentencing, the State referenced in aggravation defendant's convictions for attempt murder, aggravated battery of a peace officer, manslaughter, and burglary, argued that defendant had a "very violent background," and asked for a "substantial period" of imprisonment. The court inquired regarding the details of defendant's attempt murder conviction, and the State relayed that defendant beat, stabbed, and threatened to kill the victim after she refused to have sex with him. The State added that defendant stabbed the victim in her shoulder, puncturing her lung. The court also asked about the circumstances of defendant's manslaughter conviction, and the prosecutor explained that defendant stabbed and killed a victim following a game of cards, and also stabbed the victim's mother during the incident.

¶ 11    In mitigation, defense counsel argued that defendant worked in maintenance while not incarcerated, and that the facts of this case differed from defendant's previous crimes. In allocution, defendant maintained that he only defended himself from an attack Holmes initiated.

¶ 12    The court sentenced defendant to 12 years' imprisonment, to be served consecutively to his sentence for attempt murder, and observed that "multiple" convictions in defendant's background, including burglary and aggravated battery to a peace officer, qualified him for Class X sentencing. In so doing, the court stated defendant "led a criminal life and a violent life," and was "constantly getting himself in trouble" through "extreme acts of violence." According to the court, defendant was "violent," "incorrigible," and posed "a danger to everybody." The court denied defendant's motion to reconsider sentence.

¶ 13    On appeal, defendant argues that his sentence is disproportionate to the seriousness of his offense and overlooks his rehabilitative potential.

¶ 14    At sentencing, the court must consider both the seriousness of the crime and the defendant's rehabilitative potential. Ill. Const. 1970, art I, § 11. The seriousness of the crime is the most important factor. *People v. Branch*, 2018 IL App (1st) 150026, ¶ 39. The sentencing court's decision is entitled to significant deference, and the reviewing court will not substitute its judgment for that of the sentencing court because it may have weighed aggravating and mitigating factors differently. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010). This is because the sentencing court was better positioned to consider the " 'defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' " *Id.* (quoting *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)). The sentencing court need not weigh mitigating factors over the seriousness of an offense. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123.

¶ 15    The sentencing court's decision will not be reversed absent an abuse of discretion. *Alexander*, 239 Ill. 2d at 212. When the sentence is within the applicable sentencing range, a reviewing court will not reverse unless the sentence is "greatly at variance with the spirt and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210.

¶ 16    Aggravated battery of a peace officer is typically a Class 2 felony with a sentencing range of three to seven years. 720 ILCS 5/12-3.05(d)(4), (h) (West Supp. 2015); 730 ILCS 5/5-4.5-35(a) (West 2016). Here, however, defendant was subject to the Class X sentencing range of 6 to 30 years because of his qualifying felony convictions. See 730 ILCS 5/5-4.5-25(a) (West 2016); 730 ILCS 5/5-4.5-95(b) (West 2016).

¶ 17    The record shows that defendant, while an inmate in jail, struck Lieutenant Holmes with a broom. Holmes had to use OC Spray on defendant, and multiple officers were needed to subdue him. At sentencing, the State described defendant's substantial history of violent convictions, including for attempt murder, aggravated battery of a peace officer, and manslaughter. The court inquired into the factual details of defendant's manslaughter and attempt murder convictions before rendering the sentence.

¶ 18    On this record, we find that the court did not abuse its discretion in sentencing defendant to 12 years' imprisonment. The sentence was within the sentencing range and thus defendant must show that the sentence "varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *People v. Contursi*, 2019 IL App (1st) 162894, ¶ 23. Defendant contends that the sentence is disproportionate because his physical contact with Holmes was brief and Holmes was not seriously injured. We disagree. Aggravated battery of a corrections

officer is an inherently serious offense because of the risk it poses not only to the officer involved, but also to other officers and inmates should the situation escalate. Additionally, the court here was within its discretion to consider defendant's criminal history and conclude therefrom that his conduct was sufficiently serious to warrant a sentence above the Class X minimum because he evidenced a lack of rehabilitation from his previous violent acts, and posed a significant danger of committing violent acts in the future. See *People v. Himber*, 2020 IL App (1st) 162182, ¶ 59 (a defendant's criminal history is an appropriate aggravating factor for consideration at sentencing).

¶ 19    Defendant also argues that the court "was more focused" on the facts underlying his prior convictions than the instant offense, and that "much of [defendant's] serious background already factored into the elevation of his sentencing from a Class 2 felony to the Class X sentencing range."[1]

¶ 20    Initially, we note that "the trial judge is to consider all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding." *People v. Barrow*, 133 Ill. 2d 226, 281 (1989). To the extent, however, that defendant can be understood to argue that the court improperly considered the mere existence of his qualifying convictions in aggravation, we disagree. In *People v. Thomas*, 171 Ill. 2d 207 (1996), the supreme court explained that "while the *fact* of a defendant's prior convictions" determines Class X eligibility, "it is the *nature and circumstances* of these prior convictions which, along with other factors in aggravation and mitigation, determine the exact length of that sentence." (Emphasis in original.) *Thomas*, 171 Ill. 2d at 227-28 (citing *People v.*

---

[1] Defendant asserts that he qualified for Class X sentencing specifically because of his convictions for burglary, possession of a controlled substance with intent to deliver, and armed violence. As noted, however, the trial court mentioned other offenses in explaining why Class X sentencing applied.

*Saldivar*, 113 Ill. 2d 256, 269 (1986)). Here, the court inquired into the underlying facts of one of defendant's qualifying convictions, namely, attempt murder, and acknowledged the violent conduct underlying defendant's convictions for both attempt murder and involuntary manslaughter at sentencing in light of the information the State relayed. On this record, we find that the court appropriately considered the nature and circumstances of defendant's previous criminal conduct in arriving at its sentence.

¶ 21    Based on the above, we affirm the judgment of the circuit court.

¶ 22    Affirmed.