NO. 4-97-0582

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of 

v. ) Champaign County

DANIEL B. DOUGLAS, ) No. 94CF783

Defendant-Appellant. ) 

) Honorable

) John G. Townsend,

) Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In December 1994, defendant, Daniel B. Douglas, pleaded guilty to aggravated battery of a child (720 ILCS 5/12-4.3(a) (West 1992)).  The trial court later sentenced him to 25 years in prison as a Class X offender pursuant to section 5-5-3(c)(8) of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3(c)(8) (West 1992)).  Defen­dant ap­pealed, and this court affirmed.  
People v. 
Douglas
, No. 4-95-1003 (1997) (unpublished order under Supreme Court Rule 23).

In February 1997, defendant filed a 
pro
 
se
 petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 
et
 
seq
. (West 1996)), alleging that he was denied effective assistance of counsel when his trial counsel failed to advise him prior to the guilty plea hearing that he was eligible to be sentenced as a Class X offender.  In March 1997, defen­dant filed an amended 
pro
 
se
 peti­tion, in which he reassert­ed all of the allegations set forth in his origi­nal petition and further alleged that (1) section 5-5-3(c)(8) of the Code subject­ed him to an impermissible double enhancement of his penalty; and (2) he was denied effec­tive assis­tance of counsel when his counsel on appeal failed to challenge that section's constitu­tional­ity.  The trial court subse­quently dis­missed defendant's peti­tions as frivolous and patently without merit, pursu­ant to section 122-2.1 of the Act (725 ILCS 5/122-2.1 (West 1996)).  Defen­dant ap­peals, arguing that (1) because the court failed to rule upon his original petition within 90 days of its filing, the court lacked authority to dismiss the petition under section 122-2.1 of the Act; and (2) the court erred by ruling his petition was frivolous and patently without merit.  We affirm.

I.  THE TRIAL COURT'S TIMELINESS IN RULING ON 

DEFENDANT'S PETITION

Defendant first argues that the trial court's failure to rule on his original petition (filed February 19, 1997) within 90 days of its filing rendered the court's dismissal void.  In response, the State argues that the statutory time period com­menced running upon the March 6, 1997, filing of defendant's amended peti­tion.  We agree with the State. 

Section 122-2.1(a) of the Act requires a trial court to which a postconviction petition is directed, "[w]ithin 90 days after the filing and docketing of each petition[, to] examine such peti­tion and enter an order thereon pursuant to [that] [s]ection."  725 ILCS 5/122-2.1(a) (West 1996).  The 90-day period set forth in section 122-2.1(a) is "mandatory and [a trial court's] order of dismissal after the end of that period must be set aside."  
People v. Dauer
, 293 Ill. App. 3d 329, 332, 687 N.E.2d 1188, 1190 (1997).

The Act does not address the effect of a defendant's filing an amended or supplemental petition upon the 90-day period (725 ILCS 5/122-2.1 (West 1996)).  Nor does it address limits on the number of amended or supple­men­tal petitions a defendant may file.  In our judgment, when, as here, a defendant files an amended or supplemental petition, the date on which the defen­dant filed his origi­nal peti­tion cannot begin the running of the 90-day period under section 122-2.1(a) of the Act.  To give full effect to a defendant's ability to file an amended or supplemen­tal petition and to give the trial court the full time the legislature deemed necessary for the court to consid­er such peti­tions under section 122-2.1, we hold that a defendant's filing of any amended or supple­mental petition starts the 90-day period anew, not only for the later-filed petition, but for any earlier petitions, as well.   We agree with the State that to hold otherwise would allow a defendant to file an amended or supple­mental petition and effec­tively shorten the 90-day period in which the trial court must examine and rule upon that peti­tion.  For example, under defendant's proposed con­struction of section 122-2.1(a), a defen­dant could file an amended peti­tion on day 88 of the 90-day period, thus giving the trial court only two days to examine and rule upon the amended petition.  Clearly, the legis­la­ture could not have intended such an absurd result.  We note that the legis­la­ture has instead shown its intent to give trial courts 
more
 time to examine and rule upon postconviction petitions when it amended section 122-2.1 of the Act (effective January 1, 1993) to in­crease the amount of time for such examination and ruling from 30 days to 90 days.  See Pub. Act 87-904, eff. January 1, 1993 (1992 Ill. Laws 1747). 

Contrary to defendant's contention, our decision in 
Dauer
 does not require us to reach a different result.  In 
Dauer
, this court held that the trial court violated section 122-2.1(a) of the Act when it failed to examine the defendant's peti­tion within the 90-day statutory period.  Defen­dant correctly points out that the defendant in 
Dauer
 filed an amended peti­tion.  Howev­er, he did so only after the State filed a motion to dismiss his petition and in re­sponse to the court's granting him an extension of time to respond to the State's motion.  
Dauer
, 293 Ill. App. 3d at 330-31, 687 N.E.2d at 1188.  Further, the precise issue we now resolve--the effect of multiple petitions upon the 90-day period of section 122-2.1 of the Act--was not even ad­dressed in 
Dauer
.

In the present case, the 90-day period began on March 6, 1997, the date defendant filed his amended petition.  On May 27, 1997, the trial court summarily dismissed defendant's amended petition.  (We note that the court, in an effort to be thorough, dismissed both defendant's original and amended peti­tions.  Because defen­dant's amended petition incorpo­rated his original petition, we refer to the court's ruling as a summary dismissal of defendant's amended petition.)  No dispute exists that the court's order of dismissal was within 90 days of defendant's filing of his amended petition.  Thus, we hold that the court did not violate section 122-2.1(a) of the Act (725 ILCS 5/122-2.1(a) (West 1996)). 

II.  POST-CONVICTION HEARING ACT

In 
People v. Henderson
, 171 Ill. 2d 124, 131, 662 N.E.2d 1287, 1292 (1996), the supreme court discussed the general rules regarding postconviction proceedings, as follows:

"The [Act] pro­vides a remedy for defen­dants who have suf­fered a substan­tial violation of their consti­tutional rights at trial.  [Cita­tion.]  A post-conviction proceeding is not an appeal of the underly­ing convic­tion; rath­er, it is a collateral attack on the trial court proceedings in which a defendant at­tempts to establish constitutional violations that have not been and could not have been previously adjudicated.  [Citation.]  The defendant bears the burden of establishing that a substantial violation of his constitu­tional rights oc­curred.  [Citation.]"

For a postconviction petition to withstand scrutiny and avoid dismissal under section 122-2.1 of the Act, it need only contain a simple state­ment presenting a gist of a claim for relief which is meritorious when considered in view of the record of trial court proceedings.  
People v. Dredge
, 148 Ill. App. 3d 911, 913, 500 N.E.2d 445, 446 (1986).  In 
People v. Lemons
, 242 Ill. App. 3d 941, 946-47, 613 N.E.2d 1234, 1237-38 (1993), this court discussed analy­sis under section 122-2.1, as fol­lows:  

"A 'gist of a meritorious claim' is not a bare allegation of a deprivation of a consti­tution­al right.  Although a 
pro
 
se
 defendant seeking post-conviction relief would not be expected to construct legal arguments, cite legal authority, or draft her petition as artfully as would counsel, the 
pro
 
se
 defen­dant must still plead sufficient 
facts
 from which the trial court could find a valid claim of depri­vation of a constitutional right.  ***

***

*** [T]he trial court should consider the petition at the first stage [of the court's analysis] to determine whether it contains sufficient facts upon which a meri­torious constitutional claim 
could
 
be
 based."  (Em­phasis in original.)

It is within this context that we address defendant's claims.

III. DEFENDANT'S CLAIMS OF CONSTITUTIONAL DEPRIVATION

A.  Defendant's Allegedly Unknowing Guilty Plea

Defendant argues that he sufficiently set forth the gist of a claim in his postconviction petition that he was denied effective assistance of counsel when his trial counsel failed to (1) familiarize himself with defendant's criminal history; and (2) advise defendant prior to the guilty plea hearing that he was eligi­ble to be sen­tenced as a Class X offend­er under section 5-5-3(c)(8) of the Code (730 ILCS 5/5-5-3(c)(8) (West 1992)) (based upon two prior felony convic­tions in 1980 and 1984).  We dis­agree.

In 
People v. Munson
, 171 Ill. 2d 158, 184, 662 N.E.2d 1265, 1276 (1996), the supreme court wrote the following:  

"Ineffec­tive-assistance claims are as­sessed using the two-pronged test articulated in 
Strickland v. Washington
 (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.  [Citation.]  First, the defendant must show that counsel's performance was so deficient that counsel was not functioning as the coun­sel guaranteed by the sixth amendment.  Sec­ondly, the defendant must show that the defi­cient performance prejudiced the defense.  Unless both prongs of the test are satisfied, it cannot be said that the conviction *** re­sulted from a breakdown in the adversary process."

In 
People v. Bounds
, 171 Ill. 2d 1, 41-42, 662 N.E.2d 1168, 1184-85 (1995), the supreme court also addressed this sub­ject, as follows:  

"To establish prejudice, a defendant 'must show that there is a reasonable probability that, but for counsel's unprofessional er­rors, the result of the proceeding would have been different.'  (
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.)"

Further, in 
People v. Mahaffey
, 165 Ill. 2d 445, 458, 651 N.E.2d 174, 182 (1995), the supreme court wrote that "if the ineffec­tive-assistance claim can be disposed of on the ground that the defendant did not suffer preju­dice, a court need not decide whether counsel's perfor­mance was constitutionally deficient."

To establish that defen­dant was denied effec­tive assis­tance of counsel in entering a guilty plea, defendant must demonstrate both (1) that his counsel's performance was defi­cient; and (2) preju­dice to defen­dant (defined as a reason­able probability that, but for counsel's errors, defendant would not have pleaded guilty and would have insisted on going to trial).  Prejudice is as­sessed in light of the likelihood of success at trial, and if prejudice has not been demonstrated, we need not consid­er whether counsel's performance was deficient.  
People v. Pugh
, 157 Ill. 2d 1, 14-15, 623 N.E.2d 255, 261-62 (1993).

In the present case, defendant's amended petition failed to allege the partic­u­lars under­ly­ing the allega­tion that his trial counsel incorrect­ly advised him regard­ing the range of penalties to which he could have been sentenced, such as when, where, or how defense counsel communi­cated such misinforma­tion.  Defen­dant merely alleges that "[d]uring discus­sions between [defen­dant] and [d]efense counsel prior to plea hearing, [d]efense counsel advised [defen­dant] on a likely sentence of 10 years for a guilty plea [to a Class 1 felony]."

In addition, we agree with the trial court that defen­dant failed to allege how he was prejudiced by his trial counsel's failure to advise him of his eligibility to be sen­tenced as a Class X offender where (1) defen­dant (appar­ent­ly mirror­ing his trial counsel's under­stand­ing) asserts in his peti­tion that he believed if he pleaded guilty to a Class 1 felony, he could receive an extended term of 5 to 30 years in prison (the penalty range for a Class X offender is 6 to 30 years (730 ILCS 5/5-8-1(a)(3) (West 1994)); and (2) defendant's 25-year prison sentence fell within either sentenc­ing range.  More­over, defen­dant con­cedes in his amended peti­tion that he "was to be subject­ed to a similar sentence [as compared to a sentence under sec­tions 5-5-3(c)(8) and 5-8-1(a)(3) of the Code] under the statute of the offense [of aggra­vated battery of a child,] 720 ILCS 5/12[-]4.3 [(West 1996)], 5 to 30 [years]."  

Nonetheless, defendant contends that even if he assert­ed in his petition his belief that he could receive up to 30 years for a Class 1 felony conviction pursuant to section 5-8-2 of the Code (730 ILCS 5/5-8-2 (West 1994)), such a belief would not matter because the record "contains no firm proof" that he was eligible to be sentenced to an extended term.  Specif­i­cal­ly, he con­tends that "the record simply does not affirmative­ly demon­strate that this 1994 offense oc­curred 'within 10 years after'" defendant's 1984 felony convic­tion under section 5-5-3.2(b)(1) of the Code (730 ILCS 5/5-5-3.2(b)(1) (West 1994)).  Defendant thus claims that the trial court, in examining his amended petition, was not enti­tled to rely upon his trial counsel's "apparently mistak­en belief" that he was eligible to be sentenced to an extended-term sentence.  We dis­agree.

This court does not know that the record con­tains "no firm proof" in the absence of defendant's presenting that record to us.  Because the parties had not agreed to the imposi­tion of a specif­ic sentence when defendant pleaded guilty in December 1994, we will presume that the trial court complied with the require­ment of section 5-3-1 of the Code that a presen­tence investiga­tion be conducted and a presentence report pre­pared.  730 ILCS 5/5-3-1 (West 1994); 
People v. Youngbey
, 82 Ill. 2d 556, 565, 413 N.E.2d 416, 421 (1980) (section's require­ments cannot be waived except in accor­dance with statute's own excep­tion, 
i.e.
, the parties have agreed to the imposition of a specific sen­tence).  Further, any presen­tence report pre­pared by the proba­tion office would have con­tained infor­ma­tion regard­ing defendant's prior convic­tions, and the court could have appropri­ately relied upon that information.  See 
People v. Powell
, 199 Ill. App. 3d 291, 294, 556 N.E.2d 896, 898 (1990).   

In addition, our review of the record makes clear that the trial court thor­oughly and completely admonished defendant as to the conse­quenc­es of his guilty plea.  At the guilty plea proceedings, the following colloquy took place:

"THE COURT:  That is a Class 1 fel­ony [(refer­ring to the offense to which defen­dant was pleading guilty)].  What is the range of pos­si­ble pen­al­ties for which the defendant is quali­fied by rea­son of the of­fense and his prior re­cord; your under­stand­ing, [prosecu­tor]?

[Prosecutor]:  Your Honor, I believe he should be admonished upon sentencing as a Class X felon.  I would suggest to the [c]ourt that pursuant to [section 5-5-3(c)(8) of the Code], because of a prior 1980 convic­tion for burglary, and a 1984 conviction for aggravated battery of a child, he shall be sentenced as a Class X offender.

THE COURT:  Is that your understanding, [defense counsel]?

[Defense counsel]:  May I have just a moment, your Honor?  We're ready to proceed, your Honor.

THE COURT:  Okay, [defense counsel].  The recitation by the prosecutor as to the prior record of your client, and the implica­tions that that record holds for the required sen­tencing here, is that consistent with your understanding?

[Defense counsel]:  I believe that yes, that the qualifying factors that she men­tioned would be present.  However, this was a Class 1, [with a sentencing range of] five to thir­ty [years], any­way.  But, yes, it was a Class 1 offense, a Class X sentence.

THE COURT:  All right.  As I understand the situation here, [defendant], with your prior record and the representations made by the lawyers, if you plead guilty to or are convicted of the offense, the [c]ourt would be required to sentence you under the Class X sentencing provisions of the statute.  That means if you plead guilty to or are convicted of this, the [c]ourt is required to sentence you to a term of imprisonment.  The range of possible prison sentences would be for a definite period of time; not less than six years, not more than thirty years.  Any term in prison, or the term in prison, would be followed by a period of man­da­tory su­per­vised re­lease of at least three years.  The law also per­mits the possi­bility of a fine of any amount of money up to a maximum of $10,000.00.  Now do you understand the range of possible penalties that the law provides for this charge against you, given your prior record?

[Defendant]:  Yes."

The State then indicated that defendant's guilty plea was "open" as to the sentence to be imposed, and the court admon­ished defen­dant that it could sentence him to any prison term within the range set forth under the Class X sentencing provisions--that is, between 6 and 30 years.  Defendant then tendered his guilty plea.

Defendant's re­spons­es to the trial court's ques­tions do not reveal any misun­der­stand­ing or hesitancy in his decision to plead guilty.  The record does not show that any alleged misun­der­stand­ing by defen­dant or his trial counsel regard­ing defendant's eligibility to be sentenced as a Class X offender in any way affect­ed whether defendant knowingly or voluntarily pleaded guilty.  Thus, defen­dant has not demon­strat­ed preju­dice to him in his deci­sion to plead guilty.  According­ly, we conclude that defendant's amended petition fails to satisfy the prejudice prong of the 
Strickland
 test.

In so concluding, we note that the case upon which defendant relies, 
People v. Morreale
, 412 Ill. 528, 107 N.E.2d 721 (1952), is inapposite.  In 
Morreale
, the supreme court concluded that the trial court's admonitions in that case were not sufficient to negate the effect of counsel's erroneous advice regarding the defendant's sentence.  However, several factors were present in 
Morreale
 that are not present in this case.  For example, defendant here was not represented by his trial counsel's "youthful associ­ate."  Trial counsel and his associate did not engage in hurried consul­ta­tions during a court recess by passing back and forth between two courtrooms.  The prosecutor here was not advising or pressuring defendant to plead guilty in return for a more lenient sentence.  Defendant here was not "induced to change his plea while confused and in a state of misapprehen­sion."  
Morreale
, 412 Ill. at 533, 107 N.E.2d at 724.  Moreover, the trial court's admoni­tions to defendant under Supreme Court Rule 402 (134 Ill. 2d R. 402) were more comprehen­sive than those required in 1952 when Morreale pleaded guilty, and the admoni­tions given here ade­quately ensured that defendant entered a knowing and volun­tary guilty plea.  Compare Ill. Rev. Stat. 1951, ch. 38, par. 732, with 134 Ill. 2d R. 402; see 
People v. 
Ramirez
, 162 Ill. 2d 235, 243-45, 642 N.E.2d 1224, 1227-28 (1994).

B.  Defendant's Claim That Section 5-5-3(c)(8) Was 

Unconstitu­tional Because It Subjected Defendant to a 

Double Enhancement of Penalty

Defendant also argues that he sufficiently set forth the gist of a claim in his postconviction petition that section 5-5-3(c)(8) of the Code was unconstitutional because it subjected him to an impermissible double enhancement of his penalty.  We dis­agree. 

In 
People v. Thomas
, 171 Ill. 2d 207, 229, 664 N.E.2d 76, 88 (1996), the supreme court held that a sentencing court's use of prior convictions to impose a Class X sentence under section 5-5-3(c)(8) of the Code does not preclude the court from consid­ering those same prior convictions as an aggravating factor.  The court reasoned as fol­lows:

"In the exercise of its duties, the legisla­ture has the power to codify provi­sions which enhance a criminal offense (
e.g.
, misdemeanor to a felony) or enhance the ap­plicable range of punishment (
e.g.
, extended term sentence or Class X sentencing).  *** 

*** Sec­tion 5-5-3(c)(8) does not elevate the class of a crime, but merely sets forth criteria under which a defendant shall be sentenced accord­ing to the guidelines for a Class X felony.  [Citation.]  Under this statute, the legisla­ture manifested its in­tent to subject certain defendants convicted of Class 1 and Class 2 felonies to an en­hanced sentencing range of from 6 to 30 years.  Therefore, defendant's 
offense
 was not en­hanced from a Class 1 to a Class X felony; he was simply subject to a 
single
 
punishment
 
enhancement
 to the Class X range.

*** [T]his 'second use' of defendant's prior convictions [(when the trial court considered the same two prior convictions which established the defendant's eligibility for Class X sentencing as aggravating fac­tors)] does not constitute an enhancement, because the discretionary act of a sentencing court in fashioning a particular sentence tailored to the needs of society and the de­fendant, within the available parameters, is a requisite part of every individualized sen­tencing determination.  [Citation.]  The judicial exercise of this discretion, in fashioning an appropriate sentence within the framework provided by the legislature, is not properly understood as an 'enhancement.'"  (Emphasis in original.)  
Thomas
, 171 Ill. 2d at 223-25, 664 N.E.2d at 85-86.    

Thus, contrary to defendant's claim, his sentence under section 5-5-3(c)(8) of the Code did not constitute an impermis­sible double enhancement.  Accordingly, we agree with the trial court that defendant's claim regard­ing section 5-5-3(c)(8) of the Code does not allege any depri­va­tion of his consti­tu­tional rights.  

We also disagree with defendant's contention that his postconviction petition alleges the gist of a claim that his counsel on direct appeal provided ineffective assistance of counsel by failing to raise the issue of his trial counsel's failure to object to the constitutionality of section 5-5-3(c)(8) of the Code.  Because we have already concluded that defendant's double enhance­ment claim is groundless, appellate counsel could not have been ineffective for failing to raise the issue on appeal.

C.  Defendant's Claim That Appellate Counsel Was Ineffective 

For Failing To Raise on Direct Appeal Section 5-5-3(c)(8)'s

Violation of the Separation of Powers Provision 

Last, defendant argues that he sufficiently set forth the gist of a claim in his postconviction petition that his counsel on direct appeal provid­ed ineffective assis­tance of counsel by failing to raise on direct appeal the issue that section 5-5-3(c)(8) of the Code violates the separation of powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, §1).  In his amended peti­tion, defen­dant alleged that "the [s]entencing [c]ourt was encroahed [
sic
] by the legis­lature because of the mandantory [
sic
] applica­tion of [section 5-5-3(c)(8) of the Code]."  We dis­agree.

Claims of ineffective assistance of appellate counsel are evaluated under the standard set forth in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  A defendant who contends that appellate counsel rendered ineffective assistance by failing to argue a particular issue must show that (1) "'the failure to raise that issue was objec­tive­ly unreasonable'" (performance component) and that, "'but for this fail­ure, his sentence or conviction would have been re­versed'" (prejudice component).  
People v. Flores
, 153 Ill. 2d 264, 283, 606 N.E.2d 1078, 1087 (1992), quoting 
People v. Cabal­le­ro
, 126 Ill. 2d 248, 270, 533 N.E.2d 1089, 1096 (1989).   Fur­ther, unless the underlying issues are meritori­ous, the defendant obviously suffered no prejudice due to appel­late counsel's failure to raise them on direct appeal.  
People v. Coleman
, 168 Ill. 2d 509, 523, 660 N.E.2d 919, 927 (1995).

Initially, we note that Elizabeth D. Caddick of the office of the State Appel­late Defender, who was appointed to represent defen­dant on direct appeal, raised two issues and argued each issue thor­oughly before this court.  See 
People v. Martin
, 266 Ill. App. 3d 369, 640 N.E.2d 638 (1994); see also 
Coleman
, 168 Ill. 2d at 523, 660 N.E.2d at 927, quoting 
People v. Col­lins
, 153 Ill. 2d 130, 140, 606 N.E.2d 1137, 1142 (1992) (appel­late counsel "'has no obliga­tion to raise every conceivable argument which might be made, and counsel's assess­ment of what to raise and argue will not be questioned unless it can be said that his judgment in this regard was patently errone­ous'").  Under the circumstances of this case, we cannot say that appellate counsel's judgment in not raising this issue was "patently erroneous."

Moreover, we conclude that had Caddick raised on direct appeal the issue that section 5-5-3(c)(8) of the Code violates the separation of powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, §1), it would not have mat­tered to this court because the issue is not merito­rious.

In 
Thomas
 (171 Ill. 2d at 222, 664 N.E.2d at 84), the supreme court held that section 5-5-3(c)(8) of the Code is mandatory in that it requires that all offend­ers meeting the statu­to­ry re­quire­ments be treated as Class X offenders for sentencing purpos­es.  Al­though the 
Thomas
 court did not specifi­cally address whether section 5-5-3(c)(8) of the Code violates the separation of powers provision, the court's discussion is instructive:

"[A]lthough the legislature considered the prior convictions of certain defendants in establishing their eligibility for Class X sentencing, 
the
 
legislature
 
did
 
not
 
intend
 
to
 
impede
 
a
 
sentencing
 
court's
 
discretion
 
in
 
fashioning
 
an
 
appropriate
 
sentence
, 
within
 
the
 
Class
 
X
 
range
 [(emphasis added)], by pre­clud­ing con­sid­er­ation of their criminal his­tory as an ag­gra­vating factor.  Rather, while the 
fact
 of a defendant's prior convictions de­termines his eligibility for a Class X sen­tence, it is the 
nature
 
and
 
circumstances
 of these prior con­victions which, along with other factors in aggravation and mitigation, determine the exact length of that sentence."  (Emphasis in original unless otherwise not­ed.)  
Thom­as
, 171 Ill. 2d at 227-28, 664 N.E.2d at 87.   

Further, in 
People v. Dunigan
, 165 Ill. 2d 235, 250, 650 N.E.2d 1026, 1033 (1995), the supreme court rejected a defendant's claim that the Habitu­al Criminal Act (Ill. Rev. Stat. 1989, ch. 38, par. 33B-1 
et
 
seq
. (now 720 ILCS 5/33B-1 
et
 
seq
. (West 1996))) violated the separa­tion of powers provi­sion of the Illinois Constitution (Ill. Const. 1970, art. II, §1).  Section 33B-1(a) of the Habitu­al Criminal Act provides that "Every person [whose felony convictions meet the eligibility requirements of the statute] shall be adjudged an habitual criminal."  Ill. Rev. Stat. 1989, ch. 38, par. 33B-1(a) (now 720 ILCS 5/33B-1(a) (West 1996)).  Section 33B-1(e) provides that "Except when the death penalty is imposed, anyone adjudged an habitual criminal 
shall
 
be
 
sen­tenced
 to life imprisonment."  (Emphasis added.)  Ill. Rev. Stat. 1989, ch. 38, par. 33B-1(e) (now 720 ILCS 5/33B-1(e) (West 1996)).  In so holding, the supreme court reasoned, in part, that "[t]he power to peti­tion the court to impose a 
particular
 
sanc­tion
 
is
 
not
 
the
 
power
 
to
 
sentence
.  Under the [Habitual Criminal] Act, the power to impose sentence remains with the trial judge."  (Emphasis added.)  
Dunigan
, 165 Ill. 2d at 250, 650 N.E.2d at 1033.  

Consistent with our supreme court's decisions in 
Thomas
 and 
Dunigan
, we conclude that defendant's claim that section 5-5-3(c)(8) of the Code violates the separation of powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, §1) is patently without merit.  Thus, we agree with the trial court that defendant's claim does not allege any depri­va­tion of his consti­tu­tional rights.  

Under the circumstances of this case, we hold that the trial court did not err by summarily dismissing defendant's amended petition as frivolous and patently without merit.

IV. CONCLUSION

In closing, we commend the trial court for its thought­ful trial court memorandum, which we found helpful.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.