NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180015-U

NO. 4-18-0015

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 2, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| LARRY MUMPHREY, | ) | No. 16CF1490 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Roger B. Webber, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed in part and remanded in part, holding (1) defendant suffered no prejudice when the State failed to disclose a police detective as an expert witness, (2) defendant forfeited his argument that the trial court improperly considered in aggravation at sentencing, factors inherent in or that constituted an element of his offenses, and (3) remand is necessary to allow the trial court to address defendant's claim regarding the street value fine.

¶ 2    The State charged defendant, Larry Mumphrey, with being an armed habitual criminal (counts I-IV) (720 ILCS 5/24-1.7(a) (West 2018)), unlawful possession with intent to deliver a controlled substance (count V) (720 ILCS 570/401(a)(2)(B) (West 2018)), and manufacture or delivery of a controlled substance (count VI) (720 ILCS 570/401(a)(2)(A) (West 2018)). During a bench trial, the State tendered Detective Justin Bouse as an expert regarding narcotics sales despite failing to disclose Detective Bouse as an expert witness. When defense

- 1 -

counsel objected, the trial court overruled the objection and permitted the witness to testify as an expert based on his training and experience.

¶ 3        After hearing the evidence, the trial court found defendant guilty on all counts. However, prior to imposing sentence, the court vacated the judgment on count VI. Ultimately, the court imposed concurrent 20-year sentences to the Department of Corrections, a period of mandatory supervised release, and a street value fine. Following sentencing, defendant filed a motion to reconsider sentence, which the court denied. This appeal followed.

¶ 4        Defendant appeals, arguing the trial court (1) erred in permitting Detective Bouse to testify as an expert where the State failed to disclose Detective Bouse as an expert witness, (2) improperly considered elements inherent in or an element of his offenses as aggravating factors, and (3) imposed a street value fine without an evidentiary basis to support the fine imposed. For the following reasons, we affirm the trial court's judgment with the exception of the street value fine issue which we decline to consider. Instead, we remand to allow the trial court to address the street value fine.

¶ 5                         I. BACKGROUND

¶ 6        Defendant rented storage units N and O from William Schlueter and his wife in November 2015. In October 2016, Schlueter watched defendant enter one of the units around 3:30 a.m. and leave minutes later. Shortly thereafter, Schlueter entered the storage units, found four guns in unit N, and contacted the police. Law enforcement obtained a search warrant for unit N. A few days later, officers arrested defendant and found him in possession of cocaine. After the arrest, officers obtained search warrants for unit O—where officers found 61.7 grams of a substance which tested positive for cocaine—and defendant's residence—where officers

found two digital scales, two bags of white powder, $1000 in cash, and the lease for storage units N and O.

¶ 7    The State charged defendant with being an armed habitual criminal (counts I-IV) (720 ILCS 5/24-1.7(a) (West 2018)), unlawful possession with intent to deliver a controlled substance (count V) (720 ILCS 570/401(a)(2)(B) (West 2018)), and manufacture or delivery of a controlled substance (count VI) (720 ILCS 570/401(a)(2)(A) (West 2018)).

¶ 8    A. Trial Evidence

¶ 9    After opening statements, the parties stipulated to defendant's 2005 aggravated battery with a firearm conviction and his 2001 unlawful possession of a controlled substance conviction.

¶ 10    1. *Testimony of William Schlueter*

¶ 11    William Schlueter testified he and his wife owned the storage unit warehouse at 1130 North Century Boulevard in Rantoul. On November 12, 2015, his wife signed the lease agreement with defendant for units N and O. Schlueter testified that in late October 2016, around 3:30 a.m., he watched defendant enter one of the storage units. Schlueter recalled seeing defendant enter and leave the units at similar times in the past. This time, after defendant left, Schlueter entered the units, found guns in unit N, and contacted the police.

¶ 12    2. *Testimony of Detective Timothy Rivest*

¶ 13    Detective Timothy Rivest testified he obtained a search warrant for unit N based on information Schlueter provided and found in unit N, four firearms and ammunition for the weapons. Detective Rivest testified he dealt with firearms, trained in firearms, and carried them every day.

¶ 14    On November 2, 2016, officers determined defendant lived at 1038 Ruth Crane Drive in Rantoul. They followed defendant from his home to the previously mentioned storage units, and back to defendant's home. After a struggle with defendant in his driveway, officers arrested defendant. Immediately following the struggle, arresting officers found, in the same driveway, a bag containing a white powdery substance which later tested positive for cocaine. Officers interviewed defendant and obtained search warrants for his residence and storage unit O.

¶ 15    3. *Testimony of Detective Justin Bouse*

¶ 16    Detective Justin Bouse testified that on November 2, 2016, he saw defendant leaving the house at 1038 Ruth Crane Drive, go to the storage units, and return to the house. After a struggle, Detective Bouse arrested defendant in the house's driveway. In the driveway where the struggle occurred, officers found a bag of white powder weighing 61.8 grams, which tested positive for cocaine. Detective Bouse searched defendant and found, among other things, another bag of white powder, $779 in cash, and a cell phone. The bag found on defendant contained 25 smaller bags, each containing white powder.

¶ 17    Detective Bouse later helped execute search warrants for the house and unit O. In unit O, the officers found three bags containing smaller plastic bags filled with white powder. One bag sent to the state police tested positive for cocaine and weighed 61.7 grams. Inside the house, officers found two digital scales, two bags of white powder, $1000 in cash, and the lease for storage units N and O.

¶ 18    During direct examination, the State asked Detective Bouse about his experience in drug investigations; defendant's trial counsel objected to Detective Bouse providing an opinion regarding whether the cocaine and white powder's packaging indicated anything. The

State tendered Detective Bouse "as an expert based on his training and experience in the field of cocaine sales." Trial counsel objected to the midtrial, previouslyundisclosed expert testimony: "Judge, he was not—we were not given any notice of this prior to this trial starting. I don't believe this is proper expert testimony. The [S]tate cannot just tender him as an expert whenever they feel like. They have to give us notice. They have not done that." The trial court overruled the objection: "Well, I think the opinion in question that was asked is something that—this requires some additional training and experience, so I'm gonna [*sic*] note the continuing objection, but I will allow him to express the opinions."

¶ 19        Detective Bouse testified that "[b]ased on the packaging and the number of packaging, the individual bags that were contained within larger bags and, based on the sheer quantity, I believe this to be used in the distribution and the sale of cocaine." Detective Bouse noted a person selling cocaine would use digital scales. He testified that in his training and experience, "having multiple cell phones is usually indicative of people that are selling drugs." Detective Bouse noted the same regarding the possession of large amounts of money. He also mentioned not finding, in defendant's possession, paraphernalia used to consume cocaine.

¶ 20        Detective Bouse testified that when interviewed, defendant made the following admissions:

> "[Defendant] had received a, a message to—that there was a person interested to purchasing cocaine from him. That he then traveled to where he keeps the cocaine within the storage unit, traveled to this location, retrieved the cocaine, and then traveled back to his residence in order to fulfill the transaction. *** He told us that he knew that he had the drugs on his person, that he was trying to get away from us to get inside the residence

to put them down the garbage disposal and get rid of them. *** He said that they contained cocaine and that they were the ones that were—he was intending to sell to the person that was interested in buying them. *** He said that he had not been gainfully employed for the last couple of years outside of detailing two to three cars a week for about 20 bucks a piece or somewhere around that, that amount. *** He said that that was the one thing that he knew from growing up was selling drugs and that to—in order to pay bills, have a car, have a certain lifestyle, that he had to sell drugs in order to afford that lifestyle. *** He admitted the guns were his, that he had accumulated them over the last couple of years. He did not know the history of the guns, just that he was able to purchase them and store them there ***."

¶ 21                    B. Trial Court's Findings, Posttrial Motion, and Sentencing

¶ 22          After closing arguments, the trial court found defendant guilty on all counts. On November 15, 2017, trial counsel filed a motion for new trial, alleging the trial court erred in overruling defense counsel's various trial objections. On November 17, 2017, the court denied the motion for new trial but vacated the judgment on count VI.

¶ 23          Ultimately, the trial court sentenced defendant to concurrent 20-year prison sentences. In supporting the sentence imposed, the trial court stated the following:

"Of the statutory factors in aggravation I do find that the behavior for which [defendant] is here, caused or threatened serious harm. [Defendant's trial counsel], I understand the argument that cocaine is not causing death and destruction at the same level as the opioid crisis, but

cocaine is still a very destructive drug in our society. It may not cause death directly, but it certainly ruins its share of lives. And then when we add the number of weapons and the type of weapons that were stored with the cocaine, certainly there was the threat of serious harm to others.

The second factor in aggravation under the statute is whether the defendant received compensation, and he certainly did. That was the whole point of the enterprise. He does have a significant criminal history. It's possibly not as numerous as some that we see, but it does include an agg[ravated] battery with a firearm, which is a pretty serious offense, for which he received nine years in the Department of Corrections.

According to the presentence report he was discharged on December 1st of 2014, and approximately 16 months later, on November 2d of 2016 is when he committed the offense for which he's before us today. So, I can't find a long period of law-abiding life. It would appear, even though there's no other convictions during that intervening time period, from the factors and the evidence presented in this case it would appear that for a substantial part of that [defendant] was engaged in selling drugs.

Some sentence is always necessary to deter others. And if we look at the factors in mitigation, I do have several letters here suggesting that [defendant] is a dedicated father, and that he uses the proceeds of his illegal activities to support his children. And I suppose in one respect he's to be commended for supporting his children. He's to be particularly commended for obtaining custody of the daughter that had been the victim of a crime

herself and working to get her into a much better situation. He did obtain his GED while he was in the Department the last time. There was not any evidence presented that any of the weapons that were found were used in this particular offense, or on this occasion, or in fact had been fired recently. But I don't completely accept the argument that he left the violent lifestyle behind in Chicago, because those firearms and that ammunition did not get to the storage shed in [defendant's] name by themselves.

Given the history, and the background presented in the [presentence investigation report (PSI)], I cannot find that the conduct was the result of circumstances unlikely to recur. The character and attitude as exemplified by the statement in allocution would suggest that [defendant] is unlikely to commit another crime, but that just doesn't fit with the facts of his life up until this point in time.

So, the ultimate question is what sentence is appropriate to, and I must focus not only on rehabilitative potential for [defendant], and at the age that he is currently at, he does still have some rehabilitative potential. That's inherent in being at the age that he is. However, I also must be concerned about a sentence that will adequately protect the public from further criminal conduct of [defendant's], and I think that the appropriate sentencing for each of these counts is 20 years in the Illinois Department of Corrections."

¶ 24   Additionally, the trial court imposed a $12,000 street value fine. The trial court asked the State whether it had any information as to what the street value fine should be. The

State asserted "normally *** we do—do it by the 10th of the gram, and I believe the evidence at trial was 120 grams, so 12,000 dollars, I'd say." Trial counsel countered, "I don't know what the value is that they calculated, but I don't—and I—I can't say with any certainty whether that's accurate." The court found "[i]n the absence of any contrary evidence I'll find that the street value of the contraband seized was 12,000 dollars, and I will order [defendant] to pay street value fine of 12,000 dollars[.]"

¶ 25    Trial counsel filed a motion to reconsider sentence that alleged the sentences were excessive, failed to give sufficient weight to factors in mitigation, and gave too much weight to factors in aggravation. The trial court denied the motion.

¶ 26    This appeal followed.

¶ 27                                   II. ANALYSIS

¶ 28    Defendant argues the trial court erred by (1) permitting Detective Bouse to testify as an expert despite the State's failure to disclose Detective Bouse as an expert witness, (2) considering in aggravation at sentencing, factors inherent in or that constituted elements of his offenses, and (3) imposing a $12,000 street value fine without any evidentiary basis to support the fine amount. For the following reasons, we affirm the circuit court's judgment regarding Detective Bouse's testimony and defendant's aggravating factors sentencing claim. However, we remand under Illinois Supreme Court Rules 471(e) and 472(a)(1) to allow the trial court to address defendant's street value fine argument.

¶ 29                          A. Supreme Court Rule 412 Claim

¶ 30    Under Illinois Supreme Court Rule 412(a)(iv) (eff. Mar. 1, 2001), the State must produce, *inter alia*, "any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or

comparisons, and a statement of qualifications of the expert[.]" Disclosure obligations under Rule 412 are ongoing; the State must promptly notify defendant of the discovery of any additional material or information, up to and during trial. *People v. Hendricks*, 325 Ill. App. 3d 1097, 1103 (2001); see Ill. S. Ct. R. 415(b) (eff. Oct. 1, 1971). Compliance with discovery rules is mandatory, but failure to comply does not require reversal absent a showing of prejudice. *People v. Robinson*, 157 Ill. 2d 68, 78 (1993). A new trial will be granted only if defendant proves he was prejudiced by the discovery violation and the trial court fails to eliminate that prejudice. *People v. Pasch*, 152 Ill. 2d 133, 193 (1992).

¶ 31    Here, our analysis in *People v. Steffens*, 208 Ill. App. 3d 252, 263 (1991), where we held the failure to identify a police officer as an expert witness prior to trial was not error, is instructive. In *Steffens*, we concluded defendant was not prejudiced because defendant knew or should have known the officers included in the witness list would have expertise regarding the crime charged:

> " 'It is difficult to see how defendant was prejudiced by this failure
> to disclose. He knew that the police officers would be testifying at trial. He
> also knew from other discovery the nature of the items seized from his
> person, his van and his house. It could not have come as a surprise that some
> or all of the officers would have experience in investigating bookmaking
> operations.' " *Steffens*, 208 Ill. App. 3d at 263 (quoting *People v. Scheidt*,
> 142 Ill. App. 3d 844, 847-48 (1986)).

¶ 32    Defendant's charges included one count of unlawful possession with intent to deliver a controlled substance. Through the discovery process, defendant learned Detectives Bouse and Rivest would testify at trial; defendant also knew the nature of the items seized from

his person, storage units, and residence. It could not have been a surprise that either or both Detective Rivest and Detective Bouse would have drug-related crime expertise and that either or both would testify using their expertise at trial. See *Steffens*, 208 Ill. App. 3d at 263.

¶ 33 Further, in *People v. Weaver*, 92 Ill. 2d 545 (1982), the Illinois Supreme Court laid out several factors a court should consider when determining whether a discovery violation worked prejudice.

> "The closer the evidence, the stronger is the case for excluding the statement or declaring a mistrial. The strength of the undisclosed evidence, the likehood [*sic*] that prior notice could have helped the defense discredit the evidence, the feasibility of continuance rather than a more drastic sanction, and the wilfulness of the State in failing to disclose are also factors which must be considered." *Weaver*, 92 Ill. 2d at 560.

¶ 34 In the instant case, overwhelming evidence, including the amount of cocaine found on defendant's person and in his storage unit, the number of small baggies on defendant's person, the amount of cash on defendant's person, and defendant's own statements to law enforcement, demonstrated possession with intent to deliver. Moreover, law enforcement found 61.8 grams of cocaine in the driveway to defendant's residence where the arrest took place and 61.7 grams of cocaine in defendant's storage unit. Also, defendant had a bag containing 25 smaller bags on his person at the time of the arrest. Additionally, law enforcement found $1700 in cash on defendant when they arrested him, despite defendant's later statement to police that he detailed two or three cars a week earning around $20 per vehicle.

¶ 35 The other *Weaver* factors, considered individually or in conjunction with each other, cannot overcome our *Steffens* analysis or the substantial evidence proving defendant's

intent to deliver. While if given notice, defendant would have received the notice to which he was entitled, the extensive evidence demonstrating intent to deliver suggests prior notice would not have altered the outcome.

¶ 36    Finally, the argument that because Detective Bouse conceded suspects do admit wrongdoing to protect others fails to convince us defendant suffered prejudice. In testifying, Detective Bouse described such instances as rare. Moreover, the record lacks any evidence to suggest this case involved such an instance. Frankly, the substantial and overwhelming evidence proving possession with intent to deliver was pretty much unassailable.

¶ 37    Because defendant fails to demonstrate any prejudice where the State failed to disclose Detective Bouse as an expert witness, we reject defendant's Rule 412 claim and affirm the trial court's judgment.

¶ 38                B. Aggravating Factors

¶ 39    Defendant also argues the trial court improperly considered in aggravation at sentencing, factors inherent in or that constituted an element of his offenses. Specifically, defendant asserts the court improperly considered defendant caused or threatened serious harm, received compensation, and was previously convicted of aggravated battery with a firearm.

¶ 40    Before moving forward, we note defendant has forfeited these claims. In order to preserve a sentencing issue for review, defendant must file a written postsentencing motion raising the issue. *People v. Bannister*, 232 Ill. 2d 52, 76 (2008). Defendant's motion to reconsider sentence contends, in relevant part, that "[t]he Court placed too much significance and weight on the statutory aggravating factors present, specifically, the Defendant's prior history of criminal activity and juvenile delinquency, and that the Defendant's conduct threatened serious harm." Defendant's motion to reconsider makes no argument, assertion, or contention regarding

improper consideration of factors inherent in or that constituted an element of defendant's crimes; instead, defendant highlights the extent to which the trial court considered defendant's criminal history and that defendant's conduct threatened serious harm.

¶ 41                                          1. *Plain Error Analysis*

¶ 42        Defendant argues that if we determine he failed to preserve his improper aggravating factors consideration claims, we should review the claims under the plain error doctrine. In order to obtain relief under the plain error doctrine, defendant must demonstrate a clear or obvious error under circumstances where (1) the evidence was closely balanced or (2) the error deprived the defendant of a fair sentencing hearing. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The plain error doctrine is a narrow, limited exception. *Id.* Defendant bears the burden of proof under both prongs of plain error review, and we will honor the procedural default if defendant fails to meet his burden. *Id.*

¶ 43        The first step in plain error analysis is determining whether a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Importantly, when analyzing whether the trial court relied on an improper factor at sentencing, we look to the record as a whole rather than focusing on a few words or statements by the court. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 103. Here, when we view the record as a whole, we find no error in the trial court considering the cause or threat of serious harm or defendant's prior aggravated battery with a firearm conviction.

¶ 44        At sentencing, the State urged the court to consider how drug use impacts not just the user but their loved ones, their children, and those trying to help them. In response, defense counsel urged the trial court to impose a lesser sentence suggesting the court distinguish between

selling cocaine and the opioid crisis which, according to defense counsel, constituted a greater crisis and leads to more death.

¶ 45 In explaining why possessing cocaine with intent to deliver failed to entitle defendant to some level of mitigation, the court specifically mentioned defense counsel's argument regarding cocaine verses opioids. When we consider the remarks in context, we find no error. Further, the court elaborated on the cause or threat of serious harm aggravating factor by discussing the weapons defendant possessed in terms of the nature, circumstances, and degree of defendant's conduct. As to the weapons, the court noted the number, the type, and the fact defendant chose to store the weapons and his cocaine together. Concern about the potential for harm in circumstances like those here justified considering the cause or threat of serious harm factor in aggravation. Accordingly, no error occurred.

¶ 46 We reach the same conclusion regarding the trial court considering, in aggravation at sentencing, defendant's prior aggravated battery with a firearm conviction. While noting what it described as defendant's significant prior history, the trial court mentioned defendant's prior aggravated battery with a firearm conviction. This same conviction served as one of the two prior convictions identified in the information charging defendant with being an armed habitual criminal. Thus, the prior aggravated battery with a firearm conviction served as an element of the armed habitual offense and as a factor in aggravation during sentencing.

¶ 47 Generally, an element of an offense may not be used as an aggravating factor in sentencing for that offense. *People v. Phelps*, 211 Ill. 2d 1, 11-12 (2004). However, our supreme court has explained, "the legislature did not intend to impede a sentencing court's discretion in fashioning an appropriate sentence, within the Class X range, by precluding consideration of a

defendant's criminal history as an aggravating factor." *People v. Thomas*, 171 Ill. 2d 207, 227 (1996). Here, we find the facts and resolution in *Thomas* instructive.

¶ 48　　　　In *Thomas*, the defendant was subjected to Class X sentencing because he was convicted of a Class 1 felony and had two prior Class 2 felony convictions. Where the trial court considered those same Class 2 felonies in aggravation at sentencing, the defendant argued his sentence constituted an improper double enhancement. On appeal, the appellate court reversed, finding the 15-year sentence imposed by the trial court was improper because the trial court considered the prior felony convictions used to make the defendant eligible for Class X sentencing, in aggravation at sentencing.

¶ 49　　　　Upon review of the matter, our supreme court reversed the appellate court on the issue. In finding the absence of a double enhancement, the court held the sentencing judge appropriately considered the defendant's entire criminal history, including the prior offenses. *Id.*

¶ 50　　　　Here, defendant argues *Thomas* is limited by *People v. Saldivar*, 113 Ill. 2d 256, 271-72 (1986), which held a sentencing judge can consider facts related "to the nature and circumstances of a factor inherent in the offense, but not the inherent factor itself." The context of the decision in *Saldivar* is important. In *Saldivar*, when sentencing the defendant for involuntary manslaughter, the trial court considered in aggravation at sentencing, the fact of the victim's death. In reversing and reducing the defendant's sentence, the court held that "the circuit court's finding in aggravation was not directed at the degree or gravity of the defendant's conduct, *i.e.*, the force employed and the physical manner in which the victim's death was brought about or the nature and circumstance of the offense, including the nature and extent of each element of the offense as committed by the defendant. Rather, the record demonstrates that the circuit court focused primarily on the end result of the defendant's conduct, *i.e.*, the death of

the victim, a factor which is implicit in the offense of voluntary manslaughter ***." *Saldivar*, 113 Ill. 2d at 271-72.

¶ 51        According to defendant, the *Saldivar* language quoted above required the trial court here to refrain from considering, as part of defendant's prior criminal history, the prior conviction that constituted an element of the armed habitual offender offense. Defendant claims that, instead, the court could only consider the nature and circumstances of the prior offense that constituted an element of the armed habitual offender offense. We disagree.

¶ 52        Absent in *Thomas*, which came after *Saldivar*, is any discussion of the nature and circumstances of the two prior convictions used there to classify the defendant a Class X felon and considered when scrutinizing the defendant's prior criminal history. In fact, *Thomas* found it appropriate for the trial court to consider, when sentencing the defendant within the enhanced penalty range, the prior offenses used to subject him to the enhanced penalty range. Moreover, we see no reason that because in *Thomas* the prior offenses were used to make the defendant eligible for Class X sentencing, and here the prior offense constituted an element of a Class X felony, makes any difference. Here, like in *Thomas,* the court "reconsidered defendant's prior conviction, as part of defendant's entire criminal history, in performing its constitutionally mandated duty to assess defendant's rehabilitative potential in order to fashion an appropriate sentence." *Thomas*, 171 Ill. 2d at 229. Consequently, we reject defendant's argument the trial court erred by considering the prior offense as part of defendant's prior history when fashioning the sentence in this matter.

¶ 53        Defendant also argues the trial court erred when it considered the receipt of compensation in aggravation at sentencing. The receipt of compensation is inherent in the crime of possession with intent to deliver. *People v. Conover*, 84 Ill. 2d 400, 405 (1981). When

sentencing a defendant for possession with intent to deliver, the trial court should not consider in aggravation "the mere fact that compensation is expected by one who possesses a controlled substance with intent to deliver." *People v. McCain*, 248 Ill. App. 3d 844, 850 (1993).

¶ 54    While imposing sentence, the trial court specifically identified the receipt of compensation as an aggravating factor, noted defendant did receive compensation, and described receiving compensation as the "whole point of the enterprise." Under these circumstances, the record reveals the court improperly considered in aggravation at sentencing, the receipt of compensation, a factor inherent in the crime. Hence, we must determine whether defendant satisfies either prong of plain error review.

¶ 55    Here, defendant fails to prove that absent consideration of the receipt of compensation factor, the sentencing hearing was closely balanced. At 37 years old, defendant was facing his third period of incarceration in the Illinois Department of Corrections, having served prior sentences of four and nine years after receiving multiple probation sentences on prior cases. In fact, the PSI reflected criminal involvement by defendant dating back to 1997.

¶ 56    Notably, the cases in which defendant previously received prison sentences involved possession of cocaine and weapons. In one prior felony case, defendant failed to successfully complete parole and returned to prison. In similar fashion, defendant committed the offenses in this matter less than two years after being discharged from parole. Given defendant faced sentencing on multiple Class X felonies, probation was not an option.

¶ 57    Ultimately, defendant's history and personal choices sealed his fate. Defendant fathered eight children and failed to support any of those children for whom he was ordered to pay child support. Importantly, we point out defendant's sentences fall well within the statutorily prescribed ranges for his convictions; his 20-year sentences were 10 years less than the

maximum for being an armed habitual criminal and 20 years less than the maximum for unlawful possession with intent to distribute a controlled substance sentence. While the court did mention and identify receipt of compensation as a factor in aggravation, the court failed to expand on the receipt of compensation or indicate a primary focus on the receipt of compensation as the basis for the sentence imposed. See *People v. O'Toole*, 226 Ill. App. 3d 974, 993 (1992). To the contrary, the court focused on defendant's prior history, his continued involvement in selling drugs, and the need to deter others. Thus, defendant has failed to sustain his burden regarding first-prong plain error.

¶ 58        Next, defendant contends the trial court's alleged errors violated his right to a fair sentencing hearing by unjustly affecting his fundamental right to liberty. This court rejected a similar contention in *People v. McGath*, where the defendant insisted the trial court erred in subjecting him to a double enhancement at sentencing. In holding such arguments do not fall under the purview of plain error analysis, we stated:

> "Defendant argues plain error applies to his case because the alleged error impinged on his fundamental right to liberty. However, we decline to undertake such an analysis in this case. A defendant's claim that the trial court's alleged error in imposing sentence impinged on his 'fundamental right to liberty' is not subject to plain-error review." *People v. McGath*, 2017 IL App (4th) 150608, ¶ 68.

¶ 59        Consequently, we reject defendant's argument for the same reason and note the absence of any additional argument regarding second-prong plain error.

¶ 60                        2. *Ineffective Assistance of Counsel*

¶ 61 Defendant further contends that his trial counsel was ineffective for failing to include the aforementioned alleged errors in defendant's motion to reconsider sentence. Given the only error we found involved the trial court's receipt of compensation consideration, we address counsel's failure to include that claim in the motion to reconsider sentence. "To succeed on a claim of ineffective assistance of counsel during sentencing, a defendant must show that (1) counsel's performance fell below minimal professional standards and that (2) a reasonable probability exists that the defendant's sentence was affected." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88. If defendant fails to satisfy both prongs, his ineffective assistance of counsel claim is defeated. *Id.* Where a claim of ineffective assistance of counsel is raised for the first time on appeal, our review is *de novo*. *Id.*

¶ 62 Here, defendant fails to show that there exists a reasonable probability that his sentence was affected. As explained above, the trial court gave little consideration to the receipt of compensation in fashioning defendant's sentence. Where the primary considerations in defendant's sentence were his prior history, recidivism, and the need to deter others, the sentencing was unaffected. Because defendant has not satisfied both prongs, we reject defendant's ineffective assistance of counsel claim.

¶ 63 C. Street Value Fine Claim

¶ 64 Finally, defendant argues the trial court erred in imposing a $12,000 street value fine absent any concrete evidentiary basis. Our review of the record shows the claim has potential merit. Illinois Supreme Court Rule 472(a)(1) (eff. May 17, 2019) provides that the circuit court retains jurisdiction, including during the pendency of an appeal, to address "[e]rrors in the imposition or calculation of fines, fees, assessments, or costs." Further, Rule 472(e) directs this court to remand to the circuit court an appeal in which a party has attempted to raise a

sentencing error for the first time on appeal. Ill. S. Ct. R. 472(e) (eff. May 17, 2019). Accordingly, we conclude remand is necessary to allow the trial court to address defendant's error claim regarding the $12,000 street value fine.

¶ 65                                    III. CONCLUSION

¶ 66        For the reasons stated, we affirm the circuit court's judgment with the exception of the street value fine claim, which we decline to address, and instead, remand to allow the trial court to address the street value fine claim.

¶ 67        Affirmed and remanded.